(98 App. Div. 399)
## DENISON v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. WATER COURSES—DIVERSION—INJURIES TO LAND—NONSUIT.

 Evidence reviewed, and *held* to show a substantial diversion of the course of a stream by defendant railroad company, and the filling up of the new channel, by which plaintiff's premises may have been overflowed and damaged, so as to render a nonsuit erroneous.

 McLennan, P. J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by Daniel D. Denison against the New York Central & Hudson River Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Oliver D. Burden, for appellant.

Frank Hiscock, for respondent.

SPRING, J. This action was brought to recover damages by reason of the changing of a water course, causing the water in time of a freshet to overflow the plaintiff's land and carry off the soil. The defendant's roadbed runs practically east and west on the north line of plaintiff's land. There is a spring just northeast of the land of plaintiff, from which a natural stream of water originally flowed down across the land of one Hale, not touching the land of the plaintiff. When the railroad was constructed an embankment about 30 feet in height was built just south of this spring. The defendant constructed a ditch along the north side of the embankment, which took care of the water, carrying it through a stone culvert underneath the embankment and entirely across the plaintiff's land. In 1890 the defendant built a small box culvert through its railroad embankment, about 400 feet to the east of the stone culvert, and toward the spring. It then dammed up the former ditch just west of the box culvert so that the surface water and the main stream passed through the box culvert. This culvert was on the northeast corner of plaintiff's premises, while the stone culvert was on the northwest corner, and the land descended from the box culvert westerly to the stone culvert; the fall being about 35 feet. After the water passed through this box culvert it was turned at right angles into a ditch dug by the defendant, which ran westerly on the defendant's right of way, and on the southerly side of the embankment, until it came to the southerly mouth of the stone culvert, where the water was again turned at right angles toward the south, and carried along in the channel in which it formerly flowed when the water passed through the stone culvert.

Prior to 1897 this southerly artificial ditch became filled up because of slides from the railroad embankment. In July of that year there was a freshet, and the extra flow of the water and the natural stream were precipitated through the box culvert. By reason of the sharp turn of the artificial ditch to the west, and also because it

was filled up, the water broke through and flowed in a southwest-- erly direction through the plaintiff's land until it joined the former channel, near the southerly end of plaintiff's premises, excavating the soil, tearing up rocks and stones, and finally washing out a part of a stone wall which was the south boundary of plaintiff's farm. Afterward that portion of the new channel caused by the rapid flow of the water across this lot was filled in by the defendant with hardpan, and since that time has not been tillable soil.

It appears that immediately north of the railroad embankment there is an extensive watershed, and this box culvert is the only outlet for it since the damming up of the former channel. The jury might have found from the evidence as it stood at the time of the nonsuit that, if the channel north of the embankment had remained in the condition it was before the box culvert was constructed, all the water would have flowed along through this channel and the stone culvert, which was much larger than the box culvert. The sliding of the dirt from the embankment, filling up the southerly artificial ditch on the defendant's right of way, and which was a substitute for the channel dammed up, tended to divert the water, turning it southerly upon the plaintiff's premises. While the description of the different channels is somewhat involved, we think there was evidence of a substantial diversion by the defendant of the course of the stream and of the filling up of the new channel, and the overflow of plaintiff's premises may have been found to result therefrom. The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event.

Judgment reversed and new trial granted, with costs to the appellant to abide the event. All concur, except McLENNAN, P. J., who dissents, and HISCOCK, J., not voting.