BRIDGET O'DONNELL, Respondent, *v.* THE CITY OF SYRACUSE, Appellant.

1. MUNICIPAL CORPORATIONS — LIABILITY FOR THE OMISSION OR COMMISSION OF CORPORATE ACTS. A municipality is not liable for an injury, unless it appears that some duty, incumbent upon it to perform, has been neglected or has been improperly discharged; the act, the omission or commission of which is charged as the cause of the injury, must have been within the scope of its corporate powers, as provided by the charter or by some positive enactment of law, and must be ministerial in its nature; if the duty be judicial in its nature, or if it relate to legislation in the public interest or the undertaking of some work of a public nature, which the municipality has not been commanded to do by the state, however comprehensive the powers conferred may be, the duty is necessarily discretionary, because within the exercise of a deliberate judgment.

2. HIGHWAYS. The fact that a river or stream flowing through a city has been declared a public highway by statute, does not ordinarily impose upon the municipality the duty to keep the stream in a safe condition or free from obstructions, not of its own causing.

3. WHEN CITY IS NOT LIABLE FOR FAILURE TO MAKE PROVISION AGAINST FLOODS IN STREAM USED AS OUTLET FOR ITS SYSTEM OF SEWERS. Where a municipality is using, and for many years has used, a stream or creek, running through the city, as an outlet or drainage canal for its system of sewers, under the authority of its charter and other special statutes conferring ample powers upon the municipal authorities with respect to the regulating, deepening and improving of the creek and the use thereof for drainage purposes, but no absolute duty with respect to it has been enjoined upon the city by statute, it is not liable to a property owner whose premises were injured by an extraordinary freshet or

1

flood, in which the waters of the creek rose to an unusual height, overflowed its banks and thereby caused much damage to such premises, upon the ground that no effective provision had been made to protect the inhabitants of the city and their property against the dangers of freshets or floods, increased, or at least contributed to, by the use of the creek for sewerage purposes; since the mere use of the stream as an outlet to its system of sewers is not of itself such an assumption of dominion over the stream as to make the city liable for a failure to maintain it in a safe condition; and assuming that the city had full power to make provision for obviating the danger of an overflow, its failure to exercise it was not the neglect of an absolute duty.

*O'Donnell* v. *City of Syracuse,* 102 App. Div. 80, reversed.

(Argued December 4, 1905; decided February 6, 1906.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 10, 1905, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The plaintiff recovered a judgment against the defendant for damages resulting to her property from an overflow of Onondaga creek, upon her allegations that the occurrence was chargeable to the neglect of the defendant to perform its duties, either assumed, or devolved upon it by law, with respect to the proper care and maintenance of the channel of the stream. The action came on for trial before a referee, who made findings of fact, from which he reached the legal conclusion of the defendant's liability. So far as material, the following were the facts found : On the 15th day of December, 1901, the water in the creek rose to an unusual height, overflowed the banks, reached the lot of the plaintiff, filled the cellar of her house and flooded her lot to the depth of about two feet. The water was mixed with sewage, coming from sewers constructed by the defendant and emptying into said creek. As a result of the flood, a portion of plaintiff's lot was washed away ; fruit trees, vines and bushes were destroyed ; articles of personal property were destroyed, or injured ; sewage deposits were left ; the grouting in the cellar was loosened and the walls were damaged. Onondaga creek rises in the highlands, in the southern part of the county of

Onondaga, passes in a northerly direction through the central portion of the city of Syracuse, and empties into Onondaga lake.   The creek, from the lake to the south line of the Indian reservation, which is several miles southerly from the south line of the city, was declared a public highway by an act of the legislature in 1801.   It does not appear that said creek has been used for purposes of navigation, except that prior to 1850 it was used to some extent for floating logs. There were in operation in said city twenty-three sewers that emptied into said creek, all of which had been constructed by the defendant.   They were seventy-five miles in length; thirty-five miles of which were in paved streets.   These sewers operated to produce a larger and quicker flow of the creek, than would have been produced in their absence, and "contributed to some extent to the overflow in question."   The court found that "the defendant was incorporated in 1847. In 1854 the legislature conferred upon the common council power to make ordinances to clear out and deepen the channel of said creek and for the removal of obstructions therefrom, and by the revised charter of 1885, edited 1894, power was given directly to the common council to regulate and to clear out, deepen and improve the said channel, and require obstructions to be removed from the same."   It was found that "for many years prior to December, 1901, the channel of said creek had been considerably and materially obstructed by accumulations of ashes, cinders and dirt, or other rubbish, thrown in from the banks or floating down stream, by bars of sand or gravel and by refuse from the sewers, and these obstructions by impeding the flow contributed to the overflow in question;" that "the flow of water was also impeded by several bridges constructed by the defendant;" that "the flood of December, 1901, was an extraordinary one; that in 1865 there had been a flood equal to it, or greater; that since that time there have been other floods but not so large; that the liability from the situation of the watershed of the creek to rapid accumulation and overflow in case of heavy rain or melting snow had not diminished since

1865, but rather increased; that in January, 1897, the attention of the common council of the defendant was especially called to this subject by one of its own committees; that the flood in question was such a one as might have been reasonably expected to occasionally occur; that the right of the defendant to use the creek as an outlet of the sewer was recognized by the legislature as early as 1872; that, by reason of the extensive use by the city of the creek for that purpose, it had become a part of the sewer system and its use was necessary to the efficiency of that system and that, as such, the city had the care and charge of the same; that it was the duty of the defendant to keep the channel of the creek in a reasonably safe condition for the discharge of the sewage and water; that it failed to perform this duty and that such failure contributed to produce the overflow in question and was one of the efficient causes thereof." The judgment entered for the plaintiff upon this decision was affirmed by the Appellate Division, in the fourth department, and the defendant has further appealed to this court.

*Walter W. Magee, Corporation Counsel (Benjamin J. Shove* of counsel), for appellant. The defendant, because certain of its sewers emptied into Onondaga creek, was not negligent, as a matter of law, in failing to anticipate, or to provide for taking care of, within the banks of such creek, an extraordinary flood. (*D. M. Co.* v. *Town of New Haven,* 55 Conn. 510; *Garfield* v. *City of Toronto,* 22 Ont. App. 198; *Los Angeles Assn.* v. *Los Angeles,* 103 Cal. 461; *Allen* v. *Chippewa Falls,* 52 Wis. 430; *Chicago* v. *Rushin,* 99 Ill. App. 47; *Sundheimer* v. *N. Y.,* 77 App. Div. 53; 176 N. Y. 495; *Smith* v. *Agawam Co.,* 2 Allen, 355; *Sheldon* v. *Sherman,* 42 N. Y. 486; *Mundy* v. *N. Y., L. E. & W. R. R. Co.,* 75 Hun, 479.) The plaintiff wholly failed to show that any negligence of defendant was the proximate cause of injury to her premises, and that such injury would not have occurred except for some negligence of defendant. (*Ring* v. *City of Cohoes,* 77 N. Y. 83; *Laidlaw* v. *Sage,*

158 N. Y. 101; *Rider* v. *S. R. T. R. Co.*, 171 N. Y. 155; *Leeds* v. *N. Y. T. Co.*, 178 N. Y. 121.) No absolute duty to improve the creek was imposed by statute upon defendant. (2 Dillon on Mun. Corp. [4th ed.] §§ 949, 950, 966; *Cain* v. *City of Syracuse*, 95 N. Y. 87; *Coonley* v. *City of Albany*, 132 N. Y. 153; *Griffin* v. *City of New York*, 9 N. Y. 462.) The defendant is not liable by reason of the fact that the creek was used as an outlet for its sewers. (*Graves* v. *Village of Olean*, 64 App. Div. 598; *Hentz* v. *City of Mount Vernon*, 78 App. Div. 515; *Blizzard* v. *Danville*, 177 Penn. St. 479; *Smith* v. *City of Auburn*, 88 App. Div. 396; *Spink* v. *Corning*, 61 App. Div. 84; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136; *Byrnes* v. *City of Cohoes*, 67 N. Y. 204; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Garrett* v. *Vil. of Canandaigua*, 135 N. Y. 426.) The defendant is not liable for any increase of overflow into the creek from surface drainage caused by improvements such as paved streets and gutters and exclusive of sewers and diverted waters. (*A. B. Co.* v. *Dobbs Ferry*, 84 Hun, 274; 156 N. Y. 695; *Wheeler* v. *City of Worcester*, 10 Allen, 603; *Wilson* v. *Waterbury*, 73 Conn. 416.) The defendant not having collected and precipitated its waters upon plaintiff's premises, the defendant cannot be held liable by reason of the fact that the creek was inadequate to carry this flood, and consequently is not liable for failure to so increase its capacity. (*Watson* v. *City of Kingston*, 114 N. Y. 88; *Paine* v. *Vil. of Delhi*, 116 N. Y. 224; *Rutherford* v. *Holley*, 105 N. Y. 632; *Mills* v. *City of Brooklyn*, 32 N. Y. 489; *Smith* v. *Mayor, etc.*, 66 N. Y. 295; *Lynch* v. *Mayor, etc.*, 76 N. Y. 60; *Seifert* v. *City of Brooklyn*, 101 N. Y. 140; *Urquhart* v. *City of Ogdensburg*, 91 N. Y. 71; *Garrett* v. *Vil. of Canandaigua*, 135 N. Y. 436; *Wilson* v. *Waterbury*, 73 Conn. 416; *Carr* v. *Northern Liberties*, 35 Penn. St. 325.) The defendant was not negligent in the construction and maintenance of its bridges. (*Atwater* v. *Trustees*, 124 N. Y. 602; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 N. Y. 42; *Uline* v. *N. Y. C. & H.*

*R. R. R. Co.*, 101 N. Y. 98 ; *Urquhart* v. *City of Ogdensburg*, 91 N. Y. 67 ; *Wheeler* v. *City of Worcester*, 10 Allen, 591 ; *Sprague* v. *City of Worcester*, 13 Gray, 193 ; *Van Pelt* v. *Davenport*, 42 Iowa, 308.) The defendant is not liable by reason of its failure to remove the alleged encroachments in the stream. (*Coonley* v. *City of Albany*, 132 N. Y. 153 ; *Cain* v. *City of Syracuse*, 95 N. Y. 87 ; *Griffin* v. *City of New York*, 9 N. Y. 456 ; 2 Dillon on Mun. Corp. § 951 ; *Wheeler* v. *City of Worcester*, 10 Allen, 591 ; *Yates* v. *City of Milwaukee*, 10 Wall. 497 ; *Gunning* v. *City of Buffalo*, 62 App. Div. 497 ; *K. T. Co.* v. *Schultz*, 116 N. Y. 382 ; *Smith* v. *City of Rochester*, 92 N. Y. 463 ; *B. P. L.* v. *N. Y., etc., R. Co.*, 10 Abb. N. C. 107 ; *Morgan* v. *King*, 35 N. Y. 454.) Even if defendant were held liable upon the ground of nuisance or trespass and invasion of property rights, then plaintiff could recover from defendant only such proportion of damages sustained as could be reasonably shown due to defendant's wrongful acts. (*Schriver* v. *Vil. of Johnstown*, 54 N. Y. S. R. 574 ; *Chipman* v. *Palmer*, 77 N. Y. 51 ; *Bamber* v. *City of Rochester*, 26 Hun, 587 ; 97 N. Y. 625 ; *Maximilian* v. *Mayor, etc.*, 62 N. Y. 160 ; *Ham* v. *Mayor, etc.*, 70 N. Y. 459 ; 2 Dillon on Mun. Corp. § 974 ; *N. Y. & B. L. Co.* v. *City of Brooklyn*, 71 N. Y. 580 ; *Van Valkenburg* v. *Mayor, etc.*, 43 Barb. 109.)

*Theodore E. Hancock* and *John N. Mosher* for respondent. The defendant having used the creek as an open trunk sewer by so doing became liable for its condition and was required to keep the same in proper repair. (S. & R. on Neg. § 287 ; *Sammons* v. *Gloversville*, 175 N. Y. 346 ; *Spielman* v. *Portage*, 41 Wis. 144 ; *Blizzard* v. *Danville*, 177 Penn. St. 479 ; *Hentz* v. *City of Mt. Vernon*, 78 App. Div. 515 ; *Kranz* v. *Baltimore*, 64 Md. 491 ; *Noonan* v. *City of Albany*, 79 N. Y. 470 ; *R. L. Co.* v. *City of Rochester*, 3 N. Y. 463 ; *Barton* v. *City of Syracuse*, 36 N. Y. 54 ; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194 ; *Taylor* v.

*Austin*, 83 Minn. 247.) The duties of the city of Syracuse in relation to the Onondaga creek were ministerial and not judicial, and the defendant was liable by reason thereof. (S. & R. on Neg. [5th ed.] § 287; *R. W. L. Co.* v. *City of Rochester*, 3 N. Y. 463; *Evans* v. *Long Island City*, 78 Hun, 242; *Seifert* v. *City of Brooklyn*, 101 N. Y. 136.) Defendant's bridges across the creek were obstructions to the flow of water therein. (13 Am. & Eng. Ency. of Law, 690, 691; *Drake* v. *N. Y. C. & H. R. R. R. Co.*, 75 Hun, 422; *Brown* v. *Cayuga Co.*, 12 N. Y. 486; *Mundy* v. *N. Y. L. E. Co.*, 74 Hun, 479; *Parker* v. *City of Lowell*, 11 Gray, 353; *Lawrence* v. *Fairhaven*, 5 Gray, 110; *R. W. L. Co.* v. *City of Rochester*, 3 N. Y. 463.) The defendant is liable for diverting waters from other catchment areas, charging the same with sewage and filth, and discharging the same into the creek, thereby overtaxing its capacity and causing it to overflow its banks. (*Stanchfield* v. *Newton*, 142 Mass. 110; *Seifert* v. *City of Brooklyn*, 101 N. Y. 126; *Magee* v. *City of Brooklyn*, 18 App. Div. 22; *McCarthy* v. *Vil. of Far Rockaway*, 3 App. Div. 379; *Gillette* v. *Kinderhook*, 77 Hun, 604; *Urquhart* v. *City of Ogdensburg*, 91 N. Y. 67; *Noonan* v. *City of Albany*, 79 N. Y. 470; *Carl* v. *Vil. of Northport*, 11 App. Div. 120; *Talcott* v. *City of New York*, 58 App. Div. 514.)

GRAY, J. The theory of the defendant's responsibility, maintained by the learned referee in an opinion, was that, by practically taking possession of Onondaga creek for its municipal purpose, it had "converted a natural watercourse into a public sewer" and its duty was "the same as if the sewer was originally artificial." Hence, it was "bound to maintain it in a reasonably safe and efficient condition" and having failed to perform this duty, the failure was an efficient cause of the injury to the plaintiff's property. At the Appellate Division, this theory of liability was concurred in. It was thought that, from the use made of the creek, "the city was called upon to exercise, affirmatively, its governmental functions to reduce to a minimum the damages likely

to result from the use" and that "the affirmative obligation, inseparably linked with this user, throws upon it the burden of paying whatever damages resulted from the overflowage, although the unusual flood was the inducing cause and responsible for the greater proportion of the damages." I am unable to agree with the courts below in this view of the city's responsibility towards its inhabitants. I might suggest that, as it was found that the city's acts but contributed "to some extent" to the overflow of the creek, it was error to hold it liable for a damage to the plaintiff, to which the acts of others, not acting in concert with it, had contributed. The channel of the creek had been obstructed by the throwing in of ashes, cinders, dirt and rubbish from its banks and by the formation of bars of sand and gravel; so that others than the city were, measurably, responsible for interfering with the channel of the stream. The municipality was chargeable, only, with that much of the damage which was caused by its wrongful acts and if the damage was incapable of separation and the proportions of liability could not be established, that fact affords no reason for holding the city responsible for the tortious acts of others. The rule is discussed in *Chipman* v. *Palmer*, (77 N. Y. 51), in the light of both the American and the English cases and is summarized in the statement that "where different parties are engaged in polluting, or obstructing, a stream, at different times and different places, the whole damages occasioned by such wrongful acts cannot be collected of one of the parties." (See, also, *Sammons* v. *City of Gloversville*, 175 N. Y. 346.) I think the rule is applicable to this case; but I prefer to place its decision upon a broader ground and to hold that no responsibility whatever lay upon the city for what damage the plaintiff, or others, similarly situated, may have sustained by reason of the extraordinary rise and overflow of the creek.

It will not, I assume, be disputed that a municipality would not be liable for the consequences of a mere overflow of the stream, or river, upon whose banks the settlement had been made and had grown into the proportions of a city, in

the absence, of course, of any conditions enjoining some duty with respect thereto, through the neglect of which injury had been occasioned. Indeed, it was conceded below that no duty, ordinarily, would be cast upon a municipality to restrain the waters between the banks and, hence, none to indemnify its citizens against the consequences of freshets, or floods. But the argument is that the city, by its user of Onondaga creek, under its charter and ordinances, and under certain statutes, came under a responsibility for its safe condition. That is to say, that it had assumed a dominion over the stream by converting it to its use for sewer purposes and was, therefore, under an " affirmative obligation, inseparably linked with the user," of paying the damages resulting from an overflow. This is a broad proposition and, as I think, an unwarrantable extension of the rule of municipal liability. In order that a municipality shall be made liable for causing an injury, it must appear that some duty, incumbent upon it to perform, had been neglected, or had been improperly discharged. The act, the omission, or commission, of which is charged as the cause of the injury, must have been within the scope of the corporate powers, as provided by the charter, or by some positive enactment of law. A municipal corporation is the delegate of sovereign power to legislate as to the public needs of the locality. It may be said, in a sense, to possess a dual character. It acts in a governmental capacity, to the extent that it exercises its powers in matters of public concern, and it acts in a private capacity, in so far as it exercises its powers, under its by-laws, for private advantage, in matters pertaining to the municipality, as the proprietor of the various works and properties. (*Lloyd* v. *Mayor, etc., of N. Y.*, 5 N. Y. 369.) It exercises the governmental powers delegated by the state over the particular political subdivision thereof and it cannot be held liable for the non-exercise of, or for the manner in which it exercises, those discretionary powers, which are classed as of a public, or legislative, character. But where the duty is a corporate one, having relation to its special interests, and it is absolute and perfect, and not dis-

cretionary in its nature, in the performance of which the plaintiff has an interest, his action will lie against the municipality for the damages occasioned by a failure to perform. In other words, if the duty be judicial in its nature, as calling for the exercise of judgment, no liability rests upon the municipality for non-performance; whereas, if it be of a ministerial nature, neglect to perform it will render the municipality responsible to one injured thereby. (See Dillon on Municipal Corporations, §§ 753, 778; *Griffin* v. *Mayor, etc., of N. Y.,* 9 N. Y. 456; *Lloyd* v. *Mayor, etc., of N. Y., supra.*) It is a principle of municipal responsibility, early accepted from the common law, in this state, that in the acceptance of a charter sufficient consideration is found in the grant of powers and franchises to support an implied undertaking to perform what duties are imposed, which will enure to the benefit of every individual interested in their performance. (*Weet* v. *Trustees of Village of Brockport,* 16 N. Y. 161 note; *Cain* v. *City of Syracuse,* 95 ib. 83.) But, in the application of the principle, the distinction is to be borne, constantly, in mind that a corporate duty is not always absolute. For instance, if it relate to legislation in the public interest, or to the undertaking of some work of a public nature, which it has not been commanded to do by the state, however comprehensive of the matter the powers conferred by charter, or by positive legislative enactments, may be, the duty is, necessarily, discretionary, because within the exercise of a deliberate judgment. Nor does it follow that, although there may be an admitted corporate control of the subject, an absolute and imperative duty arises. (*Cain* v. *City of Syracuse, supra.*)

I think we may, at once, dismiss from our minds any consideration of the argument that, because Onondaga creek had been declared a public highway by statute, a peculiar duty had devolved upon the city in consequence, pertinent to this case. The ordinary rule of municipal obligation, with respect to the care and maintenance of highways, under the statute, does not apply and no duty, ordinarily, rests upon the munici-

pality, through whose boundaries a river, or stream, passes, in whole, or in part, to keep it in a safe condition, or free from obstructions, not of its own causing. (*Seaman* v. *Mayor, etc., of N. Y.*, 80 N. Y. 239; *Coonley* v. *City of Albany*, 132 ib. 145.)

In the discussion of this case, I accept its facts, as they are established by the findings of the trial court, and I find the theory of the plaintiff's recovery to be contained, substantially, in this proposition, that a peculiar responsibility rested upon the city of Syracuse, by reason of an assumption of corporate dominion over the creek, in using it as a part of its sewerage system, under provisions of its charter and of special legislative enactments, and that the neglect to exercise, or the imperfect exercise of, the power, effectively, to protect the inhabitants against an overflow of the stream, made the city liable in damages to any one injured thereby. The liability of the city was predicated upon the notion of its negligence in the performance of municipal duties incumbent upon it, with respect to the maintenance of the channel of the creek. No negligence is found, nor appears, so far as mere construction of sewers, or of bridges, is concerned. It was the effect of the former, as increasing the flow of the stream, that is made to support the charge of negligence in not providing for the adequate carriage of the waters from freshets and floods. As to the bridges, their construction was authorized and it was an unquestionable duty of the municipality, whose territory the stream separated, to construct them as connections and portions of the streets, or highways. No liability was thereby cast upon the city for any consequential damages, which may be claimed to have been occasioned through their having impeded the flow of the stream. (*Radcliff's Exrs.* v. *Mayor, etc., of Brooklyn*, 4 N. Y. 195; *Atwater* v. *Trustees of Village of Canandaigua*, 124 ib. 602.)

I consider that we must find support for this judgment, solely, in some duty cast by the statute upon the municipality and negligently performed, or omitted. I find no evidence of a corporate dominion, or control, assumed, other than in

the use made of the creek, as an outlet for its system of
sewers, and it is necessary, briefly, to notice, in the light of
the legal principles, to which I have above called attention,
the powers conferred upon the corporate authorities in the
charter legislation, or in the special acts, to which our atten-
tion has been directed.  The city of Syracuse was incorpo-
rated in 1847.  Onondaga creek, rising in the highlands to
the south of the city, flows through it to the north ; draining
the extensive watershed of the country beyond the city and
furnishing a natural drainage for municipal needs.  The
original charter provisions gave authority to the common
council to make highways, bridges, sewers, etc., and imposed
duties with respect to their proper maintenance and repair.
In 1854, (Chap. 28 of the laws), the legislature, revising the
charter, gave power to the common council to pass ordinances
and to make regulations, providing, among other things, for
the construction and the repair of sewers ; for the regulation,
straightening and improvement of the channel of Onondaga
creek and for the draining of the lands adjacent thereto ; for
the prevention of encroachments upon the channel and for the
deepening of the same.  In subsequent charters, as amended,
revised, or affected by legislation, ample powers were con-
ferred upon the municipal government, with respect to the
making, maintenance, or improvement, of sewers, and to the
regulating, deepening and improving of Onondaga creek.
In 1854 and 1855, (Chaps. 86 and 508 of the laws), special
commissions were appointed by the legislature for the pur-
pose of straightening the creek and of making a new and
artificial channel and, to some extent, this work was done.
By subsequent acts, commissions were appointed and powers
were conferred upon the municipal authorities to establish a
system of sewerage.  In 1898, (§ 151 of chap. 595 of the
laws), the legislature provided that " all sewers   *   *   *
shall conform in all things to the system of sewerage set
forth in the report and shown by the maps made by Samuel
M. Gray " etc., with power to " the common council in their
discretion to make any necessary change in said system," etc.

It, also, appears that the attention of the common council had been called, by one of their committees, to the necessity of some action to avert danger from the recurrence of possible floods, by improving the channel.

We may assume, therefore, that there were lacking neither authority, nor power, in the municipal government to take any measures, relating to the improvement of Onondaga creek, nor advisory statements as to the necessity for such measures. But, clearly, all such measures were discretionary with, and lay in the judicial action of, the authorities.   As to the sewers, the situation was different.   Their construction, so far as it had been assumed, devolved a duty upon the municipality for their maintenance, in a proper manner and free from obstructions, which was of a purely ministerial nature; for it was a corporate obligation having relation to its special interests. (*Rochester W. L. Co.* v. *City of Rochester*, 3 N. Y. 463.) The Gray system, provided for by the act of 1898, intended an operation of the sewers, which would prevent pollution of the waters of the creek and it made no provision for floods; however it may be argued that the effect would, probably, have been to protect against them.   No absolute duty appears to have been enjoined by statute upon the municipality with respect to the creek; nor was any created by an assumption of the undertaking to control and to restrain, under all circumstances, its waters.   The creek had been, from early times, the natural drainage outlet for the territory and it became such for the city upon its banks.   The right of the city to make use of it for that purpose is beyond question; whether from long use by the community, or from legislative recognition.   The situation, and instances in its history, sufficiently, advised the inhabitants of the menace from an overflow of the stream, through the inability to carry off in its channel any extraordinary quantity of waters precipitated by melting snows, or excessive rains.   But, aside from the plainly discretionary nature of the powers vested in the municipal government, with respect to the subject, the exercise of those powers was fraught with many obvious difficulties.   It

was confronted with a serious problem in a situation, not created by its own acts, but by nature.  If the difficulty could be met and danger could be averted, the duty of corporate action was one calling for the exercise of deliberate judgment and discretion.

The question of municipal responsibility for insufficient, or for defective, sewerage, has been, not infrequently, the subject of discussion in the decisions of this court and the reasoning in some of the cases is not without its pertinence.  In *Mills* v. *City of Brooklyn*, (32 N. Y. 495), the complaint was for the insufficiency of the sewer to carry off the water from the streets; in consequence of which the plaintiffs' premises were flooded and their building was injured.  In deciding adversely to the claim of the plaintiffs for damages, it was held that " the duty of draining the streets and avenues of a city, or village, is one requiring the exercise of deliberation, judgment and discretion.  It cannot, in the nature of things, be so executed that in every single moment every square foot of the surface shall be perfectly protected against the consequences of water falling from the clouds upon it.  The duty is  *   *   *  of a judicial nature; for it requires the qualities of deliberation and judgment.  It admits of a choice of means and of the determination of the order of time in which improvements shall be made."  Again, it was said, " It may, therefore, be laid down as a very clear proposition, that if no sewer had been constructed at the locality referred to, an action would not lie against the corporation, though the jury should find that one was necessary."  In *Seifert* v. *City of Brooklyn*, (101 N. Y. 136), the plaintiff recovered the damages, which had been occasioned by inundations of the district of his residence, through a defective construction of the sewers.  In the opinion, the cases were reviewed and the principle of the immunity of municipal corporations from liability for damages occasioned, either by an insufficiency of the plan of an improvement, or by the neglect to exercise the power to make desired improvements, was asserted.  In that case, the liability of the defendant was upheld, upon the ground

that its acts had resulted in the creation of a nuisance. It was observed that "while the corporation was under no original obligation to the plaintiff, or other citizens, to build a sewer, at the time and in the manner it did, yet, having exercised the power to do so and thereby created a nuisance on his premises, it incurred a duty, having created the necessity of its exercise, and having the power to perform it, of adopting and executing such measures as should abate the nuisance and obviate the damage." In *Byrnes* v. *City of Cohoes*, (67 N. Y. 204), the plaintiff's property had been damaged by a flood of water, collected from the streets, which, but for the curbing and guttering, would have passed away in a natural watercourse. It was held that "the cases * * * to the effect that a municipal corporation is not liable for an omission to supply drainage, or sewerage, do not apply to a case, where the necessity for the drainage, or outlet, is caused by the act of the corporation itself."

It seems to me to be very clear, therefore, that the omission of the municipal authorities of the city of Syracuse to make provision for obviating the danger of an overflow of the creek was not the neglect of an absolute duty, which made the corporation liable for the damages of which the plaintiff complains. Assuming that there was a duty, which could have been effectively performed, and assuming that the municipality had the control, neither reason, nor authority, supports the contention that the failure to exercise the governmental power of acting upon a matter, not relating to some special interest, nor to some undertaking assumed, nor commanded by any legislative enactment, imposed a responsibility upon the corporation for what might happen injuriously to the citizens through the occurrence of an extraordinary flood. In *Cain* v. *Syracuse*, (*supra*), it was said, with respect to the failure of the common council to exercise the power to direct the tearing down of a wall, which had been made dangerous by a fire and from the fall of which the plaintiff's intestate had been killed, that, assuming the power existed, "did a duty result so absolute, certain and imperative, as to found a

right of action upon the omission ? We must consider the nature and scope of the duty and, in so doing, must not be misled by the test, which makes permissive words absolute and a command. That test　*　*　*　will not serve to make a duty, which is inevitably and inherently discretionary, nevertheless, ministerial, because the public have an interest in its exercise, or the rights of individuals may be affected by it." In this case, the power may be conceded to have existed in the common council to have ordered works, or to have put into execution plans, for averting the possible recurrence of freshets and floods ; but it did not act, whether from inability to devise any satisfactory plan, or for any other reason, is immaterial, and its non-action, like that of the state legislative body, could create no cause of action. The plaintiff and the other citizens affected by the flood were no worse off than they would have been if the creek had not been used at all for sewerage purposes, except for the incidental deposit of sewage matter. The drainage of sewers into the channel, however, did not cause the flood, although, naturally, contributing to the volume of the stream. The flood was an extraordinary and an unusual one, resulting from the natural causes of the action of the elements and of the lay of the land.

I have given my reasons, at some length, in view of the importance of the case, not only in its possible bearing upon other damage cases, but in the application of the principle of municipal liability in such cases, and I advise that the judgment appealed from should be reversed and that a new trial should be ordered ; the costs to abide the event.

Cullen, Ch. J., O'Brien, Haight and Vann, JJ., concur ; Edward T. Bartlett and Werner, JJ., dissent.

Judgment reversed, etc.