GEORGE GREIN, Plaintiff, *v.* CASPER YOHON, Defendant.

(Supreme Court, Livingston Equity Term, April, 1918).

**Water and watercourses — diversion of water from accustomed course — damages.**

> One who diverts a stream and turns a large part of its water from its accustomed course so that it flows into another watercourse and floods the land of another is liable for the damages occasioned by the flooding and he is not relieved by the fact that the water blocked up at a railroad culvert through which it would not have passed otherwise, if the culvert was sufficient for all purposes which could reasonably have been anticipated prior to the diversion.

ACTION for injunction and damages.

McInerney & Bechtold, for plaintiff.

McGreevy & Beckler (Nathan D. Lapham, of counsel), for defendant.

RODENBECK, J. The dispute in this case arises over the alleged diversion of the waters of Carney Hollow creek into Poky Moonshine creek and the main question of fact relates to whether or not when the defendant dug the ditch across his farm on March 27, 1913, he caused a diversion of the waters of the creek passing through his farm so that they flowed across the farm of the plaintiff and caused the damages or a part thereof for which he sues. Whether or not there was a diversion depends upon the pivotal question in this case, whether or not at the time that the ditch was dug the waters of Carney Hollow creek or any considerable quantity thereof were flowing in any substantially defined channel into Poky Moonshine creek. *Hartshorn v. Chaddock,* 135 N. Y. 116; *McKee* v. *Delaware & H.*

*C. Co.,* 125 id. 353; *Dennison* v. *New York C. & H. R. R. R. Co.,* 98 App. Div. 399; *Wickham* v. *Lehigh Valley R. R. Co.,* 85 id. 182; *Vernum* v. *Wheeler,* 35 Hun, 53; *Spellman* v. *Bannigan,* 36 id. 174. The case must be approached with the fact established beyond dispute that the defendant caused to be constructed a ditch by means of a roadscraper and traction engine from Poky Moonshine road north through his field to the channel of Carney Hollow creek. The fact of the construction of the ditch stands out and meets the defendant and his contentions at every turn. If Carney Hollow creek naturally flowed to the south to Poky Moonshine road and thence to Poky Moonshine hollow it was not necessary to dig a ditch and, if it did not so flow, the construction of the ditch was an unlawful act so far as it diverted the course of the creek and turned water upon the property of the plaintiff for which a liability exists irrespective of any negligence. *Hay* v. *Cohoes Co.,* 2 N. Y. 159; *Tremain* v. *Cohoes Co.,* id. 163; *Mairs* v. *Manhattan Real Estate Association,* 89 id. 498, 505; *McKee* v. *Delaware & H. C. Co.,* 125 id. 355.

The questions of law applicable to this branch of the case are well understood (40 Cyc. 654; 2 Farnham on Waters, § 489) and no discussion of them is necessary further than to say that the defendant had no right to change the course of the creek across his farm to the damage of any lower riparian owner or of any person through whose property the creek formerly did not run, or to conduct surface water by an artificial ditch upon his neighbor's land. *Vernum* v. *Wheeler, supra; Wickham* v. *Lehigh Valley R. R. Co., supra.* It is a maxim as old as the common law and a rule still in force that water must be allowed to run where it is accustomed to run. *Strobel* v. *Kerr Salt Co.,* 164 N. Y. 303. If the waters of Carney Hollow creek at the

Supreme Court, April, 1918.          [Vol. 103.

time that the ditch was dug flowed substantially in a southerly and westerly direction toward the village of Dansville the defendant had no right to divert them by a ditch into a southerly and easterly direction across the farm of the plaintiff and thence through the village of Springwater into Hemlock lake.

The farms of the parties originally lay upon separate and distinct watersheds, that of the plaintiff upon Poky Moonshine watershed and that of the defendant upon Carney Hollow watershed. The latter is more than three times the area of the former and their separate character is shown by the map of the United States topographical survey and by the size of the bridges and sluices on Poky Moonshine road and creek. On the map referred to surveyed in 1901 and 1902 Carney Hollow creek is shown as flowing to the south and west toward the village of Dansville and not into Poky Moonshine hollow and the size of the bridge at the intersection of Poky Moonshine and Carney Hollow roads, the sluice under the Poky Moonshine road at the defendant's farm, the bridges and sluices over the Poky Moonshine road in the hollow and the sluice under the Erie Railroad Company's track as they existed at the time the ditch was dug all show that they were constructed on the assumption that the waters of Carney Hollow creek flowed in a southwesterly direction and not in a southeasterly direction into Poky Moonshine hollow. The evidence of the former owners of defendant's farm is that Carney Hollow creek was formerly a trout stream and that the main channel flowed across the farm in a southwesterly direction toward Carney Hollow road and the village of Dansville and that only a small portion in times of freshet flowed in a southerly and easterly direction into Poky Moonshine hollow. This evidence is substantiated by other oral evidence so that it appears

Plath had not tied his horse as a careful and prudent man should have done, he would not have been absolved from negligence and liability although boys had tantalized his horse by throwing stones at it as a result of which it ran away. *Thompson* v. *Plath,* 44 App. Div. 291. If the New York Telephone Company had been negligent in the manner in which it attached its wires to the chimney it would not have been relieved from liability because the building contractor had been negligent, for the latter fact would only have added another tort feasor. *Leeds* v. *New York Telephone Co.,* 178 N. Y. 118; 38 Cyc. 453, 481. In the celebrated squib case Shepherd would not have been liable ·if he had not been negligent in the first instance in throwing the squib and the fact that others participated in throwing the squib from place to place did not add to or detract from his liability. *Scott* v. *Shepard,* 2 Black. 892; 3 Wilson, 403. Other illustrations might be cited in substantiation of the position here taken that if the defendant negligently or otherwise unlawfully dug the ditch and thereby diverted water of the creek and damaged defendant he is not to be relieved if some other person was also guilty of negligence for his negligence is not expunged by the negligence of another. In this case the defendant failed in a duty which he owed to the plaintiff causing the damages complained of and was therefore negligent. Negligence is an unintentional breach of a legal duty causing damage reasonably foreseeable without which breach the damage would not have occurred. If the act is intentional it ceases to be a negligent act and becomes an unlawful one falling under some other branch of the law of torts creating a liability. So that, even if the act of the defendant was not a negligent one, he would still be liable for the commission of a tort. Negligence involves an act constituting

25

a breach of duty instrumental in causing or contributing to an injury. When the defendant, therefore, is found to have been negligent, as that term is understood in law, in his relation to the plaintiff, he is liable, for his negligence involves an act constituting a breach of duty instrumental in causing or contributing to plaintiff's injury.

The defendant was expected to anticipate the reasonable consequences of turning the water of Carney Hollow creek into Poky Moonshine creek into which it had not flowed hitherto in sufficient quantity to do any substantial damage and is liable for the reasonable damages that have been occasioned thereby. The rule as to reasonable damages makes him liable only for the direct and proximate damages which resulted from his unlawful act (*O'Donnell* v. *City of Syracuse,* 184 N. Y. 1; *Carhart* v. *State,* 115 App. Div. 1) and if there had been an extraordinary flood which could be said to have caused the damages and not his negligence he would be absolved completely from liability or from so much of the damage as was caused by the flood irrespective of his negligence. *O'Donnell* v. *City of Syracuse, supra; Carhart* v. *State, supra.*

There was, however, no extraordinary flood and it becomes unnecessary to consider this element. The weight of the evidence is that it was a severe freshet but not an extraordinary one in the sense that it stood out among other storms as one which could not reasonably be anticipated. The defendant is not to be absolved for consequences which may have been aggravated by a freshet which was not greater than was usual in that section and which he might reasonably have expected. If the freshet was a usual one he is liable for the damages occasioned by his act although it was rendered more serious by the high water. The fact alone that there was a freshet usual in that

vicinity does not excuse him or relieve him from the full consequences of his act. No such damage had been caused by previous freshets, and the storm not being unusual the damage must be attributed to the large amount of water from Carney Hollow watershed which he diverted to Poky Moonshine creek by means of the ditch.

The water blocked up at the Erie Railroad Company's pipes but this circumstance does not serve to relieve the defendant. The water turned at this point and ran southerly until it reached a lower culvert, washed away the railroad embankment and thus caused the serious damage to plaintiff's muck land. These consequences followed not from the insufficiency of the pipes for they had been found sufficient previously and no substantial damages had been caused by their inability to carry the water in times of previous freshets but from their incapacity to carry the ordinary flow of Poky Moonshine creek and such freshets as might be expected and the additional water from Carney · Hollow watershed which the defendant turned into Poky Moonshine creek by means of the artificial ditch.

In arriving at these conclusions it has been necessary to weigh the testimony of the numerous witnesses in the light of their interest, bias, prejudice and partisanship which were plainly apparent in many cases, sometimes in the extravagance of the testimony itself, contradictions on cross-examination, hesitancy of speech when there should have been prompt answers, subdued replies at crucial points as if afraid to be heard, readiness to volunteer information in favor of the party calling them and in general manner and demeanor on the witness stand, all of which have had their proper influence in determining the questions of fact involved in the case and cannot be transferred to a colorless

State of New York, Court of Claims, May, 1918.    [Vol. 103.

printed record. *Rosevear* v. *Sullivan,* 47 App. Div. 421.

The defendant therefore is liable for all of the damages directly and proximately caused by his unlawful act and is not excused wholly or partly by any conditions or acts which accompanied his unlawful act and in addition should be restrained from diverting any water of Carney Hollow creek contrary to the rights of the plaintiff and should be required to discontinue any ditch constructed by him which accomplished that purpose and to fill up the same and to restore the water of the creek to its original course.

Ordered accordingly.