## Hale v. City of Louisville.

(Decided April 29, 1938.)

CHARLES W. MORRIS and WILLIAM S. HEIDENBERG for appellant.

GAVIN H. COCHRAN for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Appellant brought this suit in the Jefferson circuit court against appellee, City of Louisville, to recover of it for personal injury received by appellant by falling over a rock partly imbedded in the sidewalk, or a space of ground alleged by him to be the sidewalk, of the city on the north side of Hill street near 15th street. He bases his action upon the theory that the city negligently failed to keep the sidewalk in proper repair and safe condition for use of pedestrians, and that the city knew or, by the exercise of ordinary care, could have known of the unsafe condition of its sidewalk.

The city filed its answer traversing the allegations of the petition and pleaded affirmatively that the city had never seen fit in the exercise of its governmental discretion to build or maintain and has never built or maintained any sidewalk or walkway on the north side of Hill street near 15th street at the point complained of in plaintiff's petition, and that the ground at said point is and has always remained unimproved.

At the close of plaintiff's evidence upon motion of the city, the court directed the jury to return a verdict in favor of the city, and from a judgment entered upon that verdict dismissing appellant's petition, he has prosecuted this appeal.

It is conceded in brief of counsel that the court directed a verdict in favor of the city upon the ground that the city was not liable for the alleged unsafe condition of the sidewalk because it had never assumed control over or improved the sidewalk where the accident occurred.

It is shown that theretofore an ordinance was enacted by the city providing that the sidewalk on the north side of Hill street between the west curb line of 15th street and east curb line of 17th street shall be graded full width and paved 6 feet in width adjoining the curb with a concrete sidewalk pavement except por-

tions now paved with the concrete pavement. This included the space where appellant was injured. But it is conceded that the sidewalk provided for in the ordinance on the north side of Hill street where plaintiff was injured had not in fact been constructed, but it is the contention of appellant that the city had assumed control and dominion over the dirt sidewalk where plaintiff was injured, by attempting to improve that space by removing dirt and leveling the surface, and that under the rule that if a city assumes to improve its public ways by doing any act or work thereon, liability then attaches to the city and it is bound to keep such public way in a reasonably safe condition for the use it is intended. This rule seems to be supported by the authorities; but the question here involved is whether or not there is any evidence tending to show that the city had actually in fact attempted to improve the dirt sidewalk or space where appellant was injured. We will review the evidence relating to that point.

W. C. Fisher, a photographer who made photographs of the place in question and had occasion to examine same, testified that there had not been any excavating beyond the west end of a certain board referred to in the evidence, which is about 15 feet from the corner. It appears that the place where appellant was injured was beyond the west end of the board referred to by the witness, and not included in the space where the excavating had been done. Della Johns, proprietor of a restaurant in that neighborhood who was familiar with the premises in question, was asked about the condition of the dirt sidewalk where plaintiff was injured with reference to any grading or improvements having been made thereon, stated that it was not cut down for a sidewalk, but that some dirt was removed therefrom and hauled away by some distillery company, and this was done about the same time that the city built the sidewalk on the opposite side of the street and that the dirt removed from the premises in question "wasn't hired done by anyone"; that the distillery came to get some dirt from the back end and hauled off some dirt from the sidewalk; that the property owner who owned the abutting property asked people or gave them permission to take dirt from that point. The witness was asked:

"Q. Since you have known anything about it (meaning the sidewalk where appellant was in

jured) has anything been done to this pathway down there? A. Only just a few rocks picked up here and there.

"Q. By people that walked along? A. Yes, sir, and people that worked for me. Boys would go along and pick up paper and rocks and throw them back."

W. H. Hill, another witness for plaintiff, testified that the dirt was removed by the distillery from the point in question some time during the previous summer.

Clarence Sidebottom was asked about the premises in question and said that the footpath along the place where appellant was injured ran through weeds and was "a pretty muddy, weedy, rocky path," and had been that way ever since "they" leveled it down; that it was just a plain bank and "they" leveled it down. He was asked:

"When the city put in the sidewalk on the south side of the street and part of it on the north side of the street, what was done with reference to the walkway just east, on the north side of the street, of where the concrete sidewalk had been put in? A. It was just leveled up."

C. L. Hatcher was asked what was done with the north side of Hill street, the walkway between 15th and 16th streets, and he said it was partly graded off and left that way and that was done before the sidewalks were laid on the south side of the street.

Appellant relies upon the evidence of the last two witnesses, Sidebottom and Hatcher. It is argued that their evidence shows that the city actually did some work on the dirt sidewalk at the point where appellant was injured. It is shown by the evidence that the employees of the distillery and perhaps other people in the community removed dirt, and perhaps rock and other material from the dirt sidewalk and did certain acts there, and it is only shown by the witness Sidebottom that the sidewalk was "just leveled up" when the city constructed the sidewalk on the south side of the street. But he does not state that the city employees or any one under authority and direction of the city leveled it up or did anything in the way of improving it; and, likewise the witness Hatcher testified that

the sidewalk "was partly graded and left that way," but his evidence does not show who did the grading he referred to. He does not say that he saw any of the employees of the city doing the grading, or make other statements tending to show that the city authorized the acts he mentioned. At the most, the evidence shows only a possibility or suspicion that the city might have improved or attempted to improve the sidewalk in question, and the jury could have done nothing more than conjecture, speculate, or guess as to whether or not the city authorized the acts mentioned by the witnesses.

It is our view that there is no evidence tending to show that the city attempted to grade, level, or otherwise improve the dirt sidewalk where appellant was injured.

This leaves for consideration the question whether or not the city is liable for its failure to improve its public ways at all.

In Gee's Adm'r v. City of Hopkinsville, 154 Ky. 263, 157 S. W. 30, 46 L. R. A., N. S., 229, the court, in referring to the duty of municipal corporations in this respect, said:

"One is that a city is under a duty to exercise ordinary care to keep its streets in reasonably safe condition for public travel. Another is that this duty does not arise except as to streets that the city has undertaken to improve; and yet another is that the manner or method adopted for the improvement of streets that the city undertakes to improve is left to the discretion of the governing authorities of the city.

"To state these propositions differently, the city may leave its streets, or any of them, in the condition in which they were when first established and set apart for public use, although they may have then been entirely unimproved; but, if it undertakes to improve them, it must exercise ordinary care to put and keep them in reasonably safe condition for public travel."

See, also, to the same effect, Raines v. East Tennessee Telephone Company et al., 150 Ky. 670, 150 S. W. 830.

And, in Harney v. City of Lexington, 130 Ky. 251,

113 S. W. 115, it is pointed out that the city is not liable merely for failure to improve the street or for suffering it to remain in the condition in which it was found.

The Kentucky rule as enunciated in the cases supra seems to be in harmony with the text-books and judicial decisions of other states.

In 7 McQuillan on Municipal Corporations, 2d Ed., sec. 2924, p. 64, it is said that ''it is the improvement of a street that fixes liability upon a city for neglect of duty, and that a city is not required to open or put all of its streets in condition for public travel, and that the customary liability does not attach unless some improvement by the city is attempted; that the acceptance of a dedication of a street does not impose upon a municipality a liability to keep the dedicated land in repair as a street; and that the city is not obliged to put any part of a street in repair for travel for vehicles or pedestrians.'' That is a matter of governmental discretion, for the nonexercise of which it is not liable, and if the city improves a part of a street, it is not obliged to improve all of it. See, also, 7 McQuillan on Municipal Corporations, 2d Ed., sec. 2931, p. 71.

In the case of Ely v. City of St. Louis, 181 Mo. 723, 81 S. W. 168, 169, one of the questions discussed appears to be in point with the case at bar. The plaintiff in that case was injured by falling into a gulley on a dirt or unimproved space where the city contemplated building a sidewalk but none had been built. The place where plaintiff was injured had been used by the people as a footpath for some time, and on both sides of the path weeds grew. In holding the city not liable for the unsafe condition of the unimproved sidewalk, the court said:

''When the municipality by ordinance declares that land embraced within certain lines is a public street, then, when the city obtains the title to or easement in that land for that purpose, either by gift or condemnation, it becomes a public street, but it is not necessarily then opened to the public for use. And if, after that, the city passes an ordinance providing for the improvement of the street so as to render it fit for use, even then it is not, by the mere passing of the ordinance, opened for use. * * * In the case at bar the city lawfully

exercised its governmental discretion to grade and prepare for use only the wagon roadway in part of the street. It was not required to grade and improve the whole 80-foot space and build sidewalks on it, and therefore it is not liable for not having done so. The path through the weeds and over the uneven surface spoke for itself, and told every one that there was no sidewalk there, and it invited no one to use it at the city's expense. The city was not responsible for the condition of that path, and therefore it will not be necessary to decide whether by the plaintiff's own evidence he was negligent in traveling the path under the circumstances."

See, also, to the same effect, Curran v. City of St. Joseph, 143 Mo. App, 618, 128 S. W. 203.

Many other authorities of a like nature could be cited but we deem it unnecessary to incumber this opinion by further citation of authority.

From what has been said, it follows that the city having not improved or attempted to improve the sidewalk in question, but merely left it in a state of nature, is not responsible for its alleged unsafe condition.

Wherefore, the judgment is affirmed.