## City of Maysville v. Brooks.

(Decided November 24, 1911.)

### Appeal from Mason Circuit Court.

1. Municipal Corporations—Construction of Sewers.—The legal obligation of a municipal corporation to construct sewers is one to be voluntarily assumed; and, if it does not undertake to create a system of sewers, the city is not responsible for damages caused by freshets; but where a municipal corporation assumes the obligation of constructing a sewer, it must keep the same in good order and repair, and is liable in damages for failure so to do.

2. Municipal Corporations—Private Sewer.—A municipal corporation does not, by a mere permissive use for purpose of sanitation assume responsibility for a private sewer, although it may, by appropriate action, accept a private sewer and make it a part of its public system of sewers; and, in such a case, it is as much liable for damage as it would be if had originally constructed the sewer.

3. Municipal Corporations—Adoption of Private Sewer.—Where a

natural drain or creek flowed through the property of the residents of a city, and they walled it up so as to make a continuous covered sewer or channel, of different sizes and capacity, and the municipality had done nothing toward formally accepting or adopt it as a public sewer, except to clean it out, from time to time, for sanitary purposes, there was no competent evidence to show that the city had ever accepted or adopted this channel as a part of its system of sewers.

4.  Municipality Not Liable for Defective Private Sewer.—Where the municipality has not accepted or adopted a private sewer as a part of the city's system of sewers, the municipality is not liable for injury caused to property holders by freshets, which burst the sewer and overflowed adjoining property.

J. M. COLLINS and GREEN & VAN WINKLE for appellant.

A. D. COLE and L. C. REYNOLDS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The city of Maysville is surrounded on the south by high and precipitous hills, which gradually rise from the Ohio River to a height of several hundred feet. The top is known as Anderson's Hill, which is a mile or more south of the city limits. From this point the natural water-shed from the hills drains into a deep ravine, which runs northwardly between the hills and along the line of the Lexington turnpike until it intersects with the southern limits of the city near the line of West Fourth Street. The ravine then crosses in a northeasterly direction, through the lots of the various property holders, passing through the block bounded by Third and Fourth Streets and Sutton Street and the Lexington turnpike. Continuing, it crosses Third Street about midway between Sutton and Wall Streets, and thence proceeds diagonally and northwardly to the river. This ravine is made by the natural formation of the surrounding land, and was washed out and cut through by the surface waters from rainfalls and melting snows, which have been following this course ever since and before the town was located. The surface water from this watershed south of the city passes or flows through this channel to the river. In many places this water course, or channel, as it is called, has been walled up and arched over by the different property owners through whose ground it passed, forming what is now called a sewer,

which begins at the junction of the Lexington turnpike with Fourth Street. This work of walling and arching the channel was done exclusively by the property holders many years ago, and at different times. For quite a while a large part of the channel was only confined by side walls and embankments, leaving the top open and exposed to view. In course of time the work has been completed by the several property holders so as to form a complete and enclosed sewer from the junction of the Lexington turnpike with Fourth Street to the river. Appellee's lot fronts on Third Street and extends back to Phister Avenue. It has a brick dwelling house fronting upon Third Street, with outhouses upon the rear end of the lot. The Chunn property lies immediately east of appellee's property, while the county lot upon which the Mason County jail is situated, lies immediately east of the Chunn lot. The sewer runs diagonally across the rear end of appellee's lot and thence across the Chunn lot and into the county jail yard, where it turns northwardly and crosses Third Street in its course to the river. The sewer having been constructed by different persons and according to their respective notions as to its necessary capacity, some parts of it are larger than other parts. That part of the sewer upon the Chunn lot, which is immediately east of and below appellee's lot, is eight inches smaller than the portion of the sewer through appellee's lot. The ground occupied by the appellee's property, the Chunn and the county jail lots, was originally flat, or a swamp, which has been merely filled up, more or less, by soil washed from the hills. The city has constructed streets across the sewer wherever it was necessary to accommodate the traveling public. In 1882, Mason County bought what is now the county jail lot and erected a jail thereon, and in doing so it reconstructed the channel through its lot. Subsequent to this, Chunn improved his lot by building a warehouse immediately over the drain. The appellee also has utilized the channel or sewer by building an outhouse over it, upon the rear end of her lot, with the necessary openings from the outhouse into the channel. On April 1st, 1908, Maysville and vicinity were visited by what the appellant's witnesses call a cloudburst, which sent so great a volume of water through the sewer as to burst it where it crosses appellee's lot and flood her house with water, mud and debris to a depth of some three or four feet. She escaped to the second story, and for some time was

unable to use the lower story of her house. Her furniture, carpets and other personal effects in the lower story were badly damaged, and there is some evidence that the foundations of her brick dwelling were weakened. The outhouse was thrown down, and the yard filled with debris from the sewer. Subsequently, on August 14th, 1909, a similar, but less severe, rain, again flooded appellee's house, causing considerable damage to her furniture and effects in the lower story, but not to so great an extent as that caused by the overflow of the preceding year. To recover damages for these injuries the appellee brought this suit against the City of Maysville, charging that it had negligently and carelessly constructed and maintained the sewer; that it had diverted into the sewer surface water which otherwise would not have gone there; and that it had permitted the drain or sewer to become obstructed, thereby causing the water to overflow and damage appellee's property. After denying all negligence upon its part, the city set up the four following defenses:

1. . That the drain or channel was a natural water course following the natural depression of the land, and that it had been walled up and made into a sewer by the property owners, of irregular size, as above pointed out, and over which the appellant had no control, and for which defects it was not responsible.

2. That appellant never, at any time, adopted or accepted said drain or channel as a public sewer or authorized the plaintiff or her predecessors in ownership to wall up or arch over the channel, or to in any way interfere with the natural water course which theretofore existed.

3. That appellant was a city of the fourth class, and, as such, was a mere arm of the government, and vested with its own discretion as to whether it would construct and maintain public sewers, but that it was not bound to do so; and that it had never exercised its discretion in that respect with regard to the construction or maintenance of the sewer in question, and had no rights or jurisdiction over it so far as it runs across the property of the appellee and other property owners; and

4. That the rains complained of were unprecedented and unusual in size and volume, and for damages incurred thereby the appellant was not, in law, responsible.

Appellee obtained a verdict and judgment for $2,000, and the city appeals.

Although the petition alleges that appellant constructed and maintained the sewer or drain, and that it negligently used it so as to flood appellee's property, the case has been tried upon the theory that appellant's responsibility arises from the fact, claimed by appellee to be true, that although the city had not constructed the sewer, it had taken possession of and used it for municipal purposes; had thereby converted a natural water course into a public sewer, and that its duty to its inhabitants was the same as if the sewer had been originally constructed by appellant.

The legal obligation of a municipal corporation to construct sewers is one to be voluntarily assumed, and if it does not undertake to create a system of sewers, the city is not responsible for damages caused by freshets; but if a municipality assumes the obligation of constructing a sewer, it must keep the same in good order and repair, and is liable in damages for failure so to do. But a municipal corporation does not assume the responsibility for a private sewer, although it may, by appropriate action, accept a private sewer and thus make it a part of its public system of sewers; and, in such a case, it is as much liable for damages as it would be if it had originally constructed the sewer. Gedge v. Commonwealth, 9 Bush, 61; L. & N. R. R. Co. v. Survant, 96 Ky., 205; 13 Cyc., 466.

The court properly instructed the jury that if the city had adopted the channel as a part of its system of sewers, and the damage had been occasioned by an unusually heavy rain, it should find for the city; but, if the city, after having adopted the channel as a part of its system of sewers had negligently failed to keep the same in proper repair, then the city was liable. There is no complaint made to the instruction on the measure of damages. At the close of the evidence appellant made a motion for a peremptory instruction, upon the ground that there was no competent evidence tending to show that the city had ever accepted or adopted the channel as a part of its system of sewers; but the court overruled the motion. It is manifest, therefore, that if there was evidence of an acceptance or adoption sufficient to carry the case to the jury, the verdict and judgment must be sustained. On the other hand, if there was no compe-

tent evidence showing an acceptance or an adoption of the channel as a part of its system of sewers on the part of the City of Maysville, appellant's motion for a peremptory instruction should have been sustained, and the judgment will have to be reversed.

In the case at bar there is in our opinion no competent evidence tending to show that the city of Maysville ever accepted or adopted this channel as a part of the city system of sewers. The channel was originally built by the individual property holders, and the extent of the city's connection with it, or control over it, has been to keep it cleaned and clear for sanitary purposes. The only records of the City Council that refer, in any way, to this sewer, are three entries upon its minute book, made in 1892, 1897 and 1900, all of which relate to the cleaning of the sewer for sanitary reasons. It is true that the city has constructed several man-holes at different points along the sewer, but these were made for the purpose of affording an entrance into the sewer for the purpose of cleaning it. The only verbal testimony relating to acts upon the part of the city that might be construed into an acceptance or an adoption of the sewer, is found in the depositions of Sapp and Breslin. Sapp says that he was working for the city in 1880; that some parts of the sewer were pretty badly filled up; some parts of it were pretty badly dilapidated, and that he cleaned it out and repaired it throughout. He further says that the walls or banks caved, and the walls had slipped, and he had to straighten them up. Breslin testifies that after the rain in April, 1908, and of which the appellee is here complaining, he put appellee's wall up and repaired the sewer from the Chunn property to the west. It will be remembered, however, that this was after the principal damage had been done, and the city, at appellee's request, was helping her all it could to replace her property in its original condition. The only testimony, therefore, beyond the mere cleaning out of the sewer for sanitary purposes, that could tend to show an acceptance or adoption of the channel by the city as a part of its system of sewers, is that of Sapp, to the effect that 28 years ago he had cleaned out the sewer and repaired it. He makes no attempt to show in what respect he repaired it, or that he did anything more than the cleaning out of debris that usually and naturally gathers in such places. In our opinion, this testimony amounts to no more than that of the other witnesses, who testified

that the city has done no more than clean out the sewer from time to time for the purposes of sanitation.

Ordinarily, no legal duty rests upon a municipality, through whose boundary a river or stream passes, to kept it in a safe condition or free from obstructions not of its own causing.

While it is true the plaintiff, by her petition, rests her case, in part, upon the added flow of water and consequent injuries by reason of the municipal use of the channel, the evidence fails to support that claim; on the contrary, it shows that no action upon the part of the city has caused any additional flow of water into the sewer. The appellee's case, therefore, rests upon the single claim that the city of Maysville had adopted this sewer as its own, and had negligently failed to keep it in proper repair.

One of the most instructive opinions upon this subject is found in O'Donnell v. the City of Syracuse, 184 N. Y., 1, 3 L. R. A. (N. S.), 1053, where the court, in conridering the relation of the municipality to the citizen, used this language:

"In order that a municipality shall be made liable for causing an injury, it must appear that some duty, incumbent upon it to perform, had been neglected, or had been improperly discharged. The act, the omission or commission of which is charged as the cause of the injury, must have been within the scope of the corporate powers, as provided by the charter or by some positive enactment of law. A municipal corporation is the delegate of sovereign power to legislate as to the public needs of the locality. It may be said, in a sense, to possess a dual character. It acts in a governmental capacity to the extent that it exercises its powers in matters of public concern, and it acts in a private capacity in so far as it exercises its powers, under its by-laws, for private advantage, in matters pertaining to the municipality, as the proprietor of the various works and properties. Lloyd v. New York, 5 N. Y., 369, 55 Am. Dec., 347. It exercises the governmental powers delegated by the state over the particular political sub-division thereof, and it can not be held liable for the non-exercise of, or for the manner in which it exercises, those discretionary powers which are classed as of a public or legislative character. But where the duty is a corporate one, having relation to its special interests, and it is absolute and perfect, and not discretionary in its nature,

in the performance of which the plaintiff has an interest, his action will lie against the municipality for the damages occasioned by a failure to perform. In other words, if the duty be judicial in its nature, as calling for the exercise of judgment, no liability rests upon the municipality for non-performance; whereas, if it be of a ministerial nature, neglect to perform it will render the municipality responsible to one injured thereby. See Dill. Mun. Corp., secs. 753, 778; Griffin v. New York, 9 N. Y., 456, 61 Am. Dec., 700; Lloyd v. New York, supra. It is a principle of municipal responsibility, early accepted from the common law in this State, that in the acceptance of a charter sufficient consideration is found in the grant of powers and franchises to support an implied undertaking to perform what duties are imposed, which will inure to the benefit of every individual interested in their performance. Weet v. Brockport, 16 N. Y., 161, note; Cain v. Syracuse, 95 N. Y., 83. But in the application of the principle the distinction is to be borne constantly in mind that a corporate duty is not always absolute. For instance, if it relate to legislation in the public interest, or to the undertaking of some work of a public nature which it has not been commanded to do by the State, however comprehensive of the matter the powers conferred by charter or by positive legislative enactments may be, the duty is necessarily discretionary, because within the exercise of a deliberate judgment. Nor does it follow that, although there may be an admitted corporate control of the subject, an absolute and imperative duty arises. Cain v. Syracuse, supra."

In short, the distinction is, that the obligation to establish and open sewers is a legislative duty, while the obligation to keep them in repair is ministerial. Ashley v. Port Huron, 35 Mich., 296.

In the O'Donnell case the city of Syracuse had used Onondaga creek as an outlet of its sewer for many years, and to such an extent that the creek had become a part of the sewer system; and, it was contended, that it being such a part of the system of sewers the city had the care and charge of the same, and that it was its duty to keep the channel of the creek in a reasonably safe condition. There was an overflow of the creek which resulted in serious damage to Mrs. O'Donnell. In excusing the city from liability, Judge Gray said:

"It seems to me to be very clear, therefore, that the omission of the municipal authorities of the city of Syra-

cuse to make provision for obviating the danger of an overflow of the creek was not the neglect of an absolute duty, which made the corporation liable for the damages of which the plaintiff complains. Assuming that there was a duty which could have been effectively performed, and assuming that the municipality had the control, neither reason nor authority supports the contention that the failure to exercise the governmental power of acting upon the matter, not relating to some special interest, nor to some undertaking assumed, nor commanded by any legislative enactment, imposed a responsibility upon the corporation for what might happen injuriously to the citizens through the occurrence of an extraordinary flood. * * * In this case the power may be conceded to have existed in the common council to have ordered works, or to have put into execution plans, for averting the possible recurrence of freshets and floods; but it did not act—whether from inability to devise any satisfactory plan, or for any other reason, is immaterial—and its non-action, like that of the State legislative body, could create no cause of action. The plaintiff and the other citizens affected by the flood were no worse off than they would have been if the creek had not been used at all for sewerage purposes, except for the incidental deposit of sewage matter. The drainage of sewers into the channel, however, did not cause the flood, although naturally contributing to the volume of the stream. The flood was an extraordinary and unusual one, resulting from the natural causes of the action of the elements and of the lay of the land." See also Lakey Co. v. Kalamazoo, 138 Mich., 644; 67 L. R. A., 931; and St. P. & D. R. R. Co. v. Duluth, 56 Minn., 494, 23 L. R. A., 88.

The duty and liability of the municipality in cases of this character was pointed out in Thoman v. City of Covington, 23 Ky. Law Rep., 119, 62 S. W., 721, as follows:

"If the construction and maintenance of these sewers changed the course of the surface water and caused it to accumulate at the point in question and overflow the property of appellant, she would be entitled to maintain an action to recover such damages as she sustained by reason thereof. She failed to aver this state of facts and the proof which she offered only tends to support the averments of her petition. If the surface water accumulated at the point in question and overflowed her premises, independent of any act of the city, she could

not maintain an action against it therefor. The city must do some act which produces the injury to enable the injured party to recover against it. The sewers may have been inadequate to carry off the surface water which accumulated, still may not have had anything to do with it collecting at the point in question. To maintain an action it was incumbent upon her to show that the sewers not only failed to carry off the surface water so as to relieve her premises from it, but that they were the cause of it accumulating there.''

Campbell v. Vanceburg, 30 Ky., Law Rep., 1341, 101 S. W., 345, is very similar in its controlling facts to the case at bar, with the material exception that Vanceburg had taken possession of the turnpike road, and in converting it into a street, it was claimed the city had changed the natural flow of the surface water to plaintiff's damage. In that case the court said:

''When territory within a city is permitted by the authorities to remain in the condition it was when annexed, in other words, if the city does not undertake to make improvements, or to build streets, sidewalks, drains or gutters, or reconstruct old ones, it will not be liable for any damage caused by the overflowing of the premises, because if it has not interfered in any (way) with the natural condition of affairs the overflow can not be attributed to its acts. A city is not liable for its failure to make new improvements or alter or reconstruct old ones. It may leave things just as it found them. In Dillon on Municipal Corporations, section 1041, the rule is thus stated:

'' 'It is clear that there is no liability on the part of a municipal corporation for not exercising the discretionary or legislative power it may possess to improve streets, and as part of such improvement to construct gutters or provide other means of drainage for surface waters so as to prevent them from flowing upon the adjoining lots.' ''

These last two cases are cited with approval in Harney v. Lexington, 130 Ky., 251. See also, generally, Georgetown v. Commonwealth, 115 Ky., 382; reported with full annotation in 61 L. R. A., 673.

In view of these explicit decisions of this court, we deem it unnecessary to go into a more minute examination of the authorities of this and other States. It is sufficient to point out the fact that appellant did not build the aqueduct or channel complained of, and had no

control over it, beyond a permissive control. It was built by the property holders upon their own respective properties, and was used by them through connections made therewith to suit themselves.   There is no claim that appellant owned or had any interest whatever in the soil upon which the channel was built; and, without the consent of the property holders, the city could not have acquired any such interest, except by condemnation proceedings.   And, as neither consent was given or condemnation proceedings taken, the city's legal relation with respect to this land and acqueduct, remained unchanged, and the property holders' ownership was unimpaired.   Downend v. Kansas City, 156 Mo., 60, 51 L. R. A., 170.   If appellant had undertaken, against the will of appellee, to alter or change the channel in some way which appellee might have considered injurious to her property, could the appellant have shown, under the facts of this case, any such claim of right of ownership to the channel as would have deprived the appellee of her superior right of ownership?   Clearly, no court would sustain appellant's right to so proceed.   And, that being true, it follows that appellant can not be held liable for failing to do that which it had no legal right to do.   This case is quite different in principle from City of Louisville v. Snow's Admr., 107 Ky., 543, where the city charter effected an acceptance of the dedication of a street, without any affirmative act on the part of the city.

We are of opinion that appellant's motion for a peremptory instruction should have prevailed.

Reversed and remanded for further proceedings.