## Gee's Admr. v. City of Hopkinsville.

(Decided June 5, 1913.)

## Appeal from Christian Circuit Court.

1.  Municipal Corporations—Streets—Duty of City in Respect to.— A city may leave its streets, in the condition in which they were when first established and set apart for public use, although they may then have been entirely unimproved, but if it undertakes to improve them, it must exercise ordinary care to put and keep them in reasonably safe condition for public travel, having, however a discretion as to the character and quality of the repairs or improvements that it may make, subject to the limitation that when completed the streets will be reasonably safe for public travel.

2.  Municipal Corporations—Streets—Liability for Unsafe Places in. —Discretion as to Character of Repair.—A city is only guilty of actionable negligence when defects or unsafe places in a street that it constructs are the proximate cause of the injury complained of. If the street it constructs is reasonably safe, it is not to be made liable for the failure to adopt other methods of construction or the failure to do something that it might or might not do in its discretion.

3.  Municipal Corporations—Bridges—Duty in Respect to Erection of as Part of Street.—A city is under no legal duty to construct a bridge across a river that runs through it, and therefore its failure to do so cannot be made the basis of an action for negligence, but when the city has erected a bridge, then it must exercise ordinary care to maintain it in reasonably safe condition for public travel.

4.  Municipal Corporations—Not Liable in Damages for Death of Person Drowned in River on Account of Failure to have a Bridge on a Street.—Where a river traversed a city, and the city had macadamized and put in reasonably safe condition for public travel a street on both sides of the river and to the center of the bed, it was not liable in damages for the death of a traveler who attempted to cross the river at the street in the nighttime, after a heavy rain had swelled the usually shallow stream into a dangerous current.

5.  Municipal Corporations—Street Lights—Duty in Respect to.—A city is under no duty to light its streets. It may, if it chooses to do so, leave them unlighted, and cannot be made liable in damages to a traveler who is injured solely because of its failure to light them.

6.  Municipal Corporations—Street Lights—Duty in Respect to.— Where there are no defects or unsafe places in the streets, and they are in a reasonably safe condition for public travel, the city has a broad discretion as to the number and character of the lights that it will establish.

7.   Municipal Corporations—Street Lights—Duty in Respect to.—In
respect to the lighting of streets a city is, in no state of case, re-
quired to do more than furnish such lights as may be necessary
to keep the character of streets that it has constructed in a rea-
sonably safe condition for travel.   It is not required to furnish
lights to make safe that character of streets that it is under no
duty to construct or maintain.

DOUGLAS BELL, JOHN C. DUFFY, J. E. BYARS and TRIMBLE
& BELL for appellants.

THOMAS P. COOK for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

There runs through the city of Hopkinsville a stream
of water called the West Fork of Little River that dur-
ing heavy rainfalls becomes a swift, high and dangerous
current, although in ordinary conditions it is passable on
foot.   Several of the streets of the city, including Second
street, cross this river.   On two of these streets the city
has built bridges, and, many years ago it macadamized
Second street on each side of the river to the center of it,
thereby making it, when the river was low, a safe high-
way for vehicles as well as pedestrians.

In March, 1910, James Gee, who lived in Hopkinsville,
went out into the country in his buggy early one morn-
ing and returned to the city on the same night after dark.
During the day there was a heavy rainfall that made the
river dangerous to cross at Second street, and when Gee,
who did not know of the heavy rainfall, or of the condi-
tion of the river, attempted, on his return, to cross it at
Second street, he was caught in the current and drowned.
Soon afterwards his administrator   brought this suit
against the city to recover damages for his death, charg-
ing that it was due to the negligence of the city in fail-
ing to have a bridge across the river at Second street
and in failing to have the street so lighted near the river
as that travelers in the night might be able to discover
before getting into it whether it was passable or not.

On the trial of the case, after evidence for the plain-
tiff had been introduced, showing that there was no bridge
at Second street and that the street lights did not furnish
sufficient light to disclose the condition the river was in,
and when the case for the plaintiff had been closed, the
court directed the jury to return a verdict for the de-
fendant, and the plaintiff appeals.

Leaving out of view for the moment the question of lights, we may say at the outset that three propositions relating to the duty of municipal corporations in reference to streets are well settled. One is, that a city is under a duty to exercise ordinary care to keep its streets in reasonably safe condition for public travel. Another is, that this duty does not arise except as to streets that the city has undertaken to improve; and yet another is, that the manner or method adopted for the improvement of streets that the city undertakes to improve is left to the discretion of the governing authorities of the city.

To state these propositions differently, the city may leave its streets, or any of them, in the condition in which they were when first established and set apart for public use, although they may have then been entirely unimproved, but if it undertakes to improve them, it must exercise ordinary care to put and keep them in reasonably safe condition for public travel, having, however, a discretion as to the character and quality of the repairs or improvements that it will make, subject to the limitation that when completed the streets will be reasonably safe for public travel. Clay City v. Roberts, 124 Ky., 594; Moore v. City Council of Harrodsburg, 32 Ky. L. R., 384; Harney v. City of Lexington, 130 Ky., 251; Arnold v. City of Stanford, 113 Ky., 852; Campbell v. City of Vanceburg, 101 S. W., 343; City of Maysville v. Brooks, 145 Ky., 526.

Applying with some little elaboration these principles to the case we have, we think it clear that the city was under no legal duty to construct a bridge across this river at Second street, and therefore its failure to do so could not be made the basis of an action for negligence. Dillon on Municipal Corporations, Vol. 2, Sec. 728; Leslie County v. Wooten, 115 Ky., 851. The city, in the exercise of the discretion vested in it, decided, as it had the right to do, not to erect a bridge as a part of Second street but to macadamize the street on each side of and across the bed of the river, and there is no claim that there were any defects or unsafe places in this improvement as it was made. The death of plaintiff's intestate was not caused by defects in the condition of the street as it was constructed but by causes attributable to other agencies over which the city had no control and to conditions that the city did not have any part in creating.

It is of course true that if the street had crossed the river on a sufficient bridge, the accident that brought

about the death of Gee would not have occurred, but as the city had provided such a way as, in its judgment, was reasonably safe, and the accident was not due to any defect in this way, or in the manner of its construction the city can not be made liable on the ground that it should have erected a bridge. A: city is only guilty of actionable negligence when defects or unsafe places in a street that it constructs are the proximate cause of the injury complained of. If the street it constructs is reasonably safe it is not to be made liable for the failure to adopt other methods of construction or for the failure to do something that it might or might not do in its discretion.

If, however, the city had erected a bridge across this river as a part of Second street, then the law would have imposed upon the city the duty of exercising ordinary care to maintain this bridge in reasonably safe condition for public travel, but it assumed no liability for its failure to erect one.

Coming now to the question of lights, the same principles apply as do in the construction of streets. A city is under no duty to light its street, it may, if it chooses to do so, leave them unlighted, and cannot be made liable in damages to a traveler who is injured solely because of its failure to light them. There is, however, some apparent conflict in the authorities as to the duty and corresponding liability of the city where it undertakes to light its streets but does not light them sufficiently to give notice to travelers of conditions that would not be unsafe or dangerous in the daytime but that might be dangerous at night. We think, however, that this apparent conflict is due to the fact that the cases holding the city to the duty of furnishing adequate lights arose when the injury complained of was caused by some defect or unsafe place in the street that could have been avoided if the street had been properly lighted, rather than the failure to furnish sufficient lights when the streets as· constructed were in reasonably safe condition for public travel.

Of course if there are defects or unsafe places in a street, the city is under a duty to exercise ordinary care to warn the traveling public, by lights or other reasonably sufficient means in the night time, of these defects or unsafe place, and if it fails to do this, will be liable to any person injured by reason of such failure: Grider v.

Jefferson Realty Co., 116 S. W., 691; City of Georgetown v. Groff, 136 Ky., 662.

But where there are no defects or unsafe places in the streets, and they are in a reasonably safe condition for public travel, the city has a broad discretion as to the number and character of lights that it will establish, and cannot be made liable in damages for the failure to furnish such number and quality of lights as would better illuminate the streets than those provided. Dillon on Municipal Corporations, Vol. 2, Sec. 1010; City of Daytona v. Edson, 46 Fla., 463, 4 A. & E. Ann. Cases, 1000; White v. City of New Bern, 146 N. C., 447, 13 L. R. A., (n. s.) 1166.

But if we should assume that a city was under a duty to maintain a greater number of lights than it had provided, and such number as would well light its streets, we are quite sure that the city is not required to do more in this respect than furnish such lights as may be necessary to light reasonably well the character of streets that it has constructed, and it is not required to furnish such a number of lights as might be required to make safe that character of street that it was under no duty to construct or maintain. In other words, when the city has provided sufficient lights to make the streets that it has constructed reasonably safe for public travel, this, in any state of case, is its full measure of duty in respect to lights.

If this view is correct, it follows that as the lights furnished were sufficient for the character of street that was constructed, the plaintiff failed to make out a case on account of inadequate lights, as there is no claim that the lights were not sufficient to afford reasonable protection for the character of street that the city had constructed at the place where appellant's intestate lost his life.

For the reason indicated, the judgment of the lower court is affirmed.