## LOUISVILLE GAS AND ELECTRIC COMPANY, Appellant,

v.

## Jonathon Mark ROBERSON (Individually and as Administrator of the Estate of Shytone M. Roberson), Appellee.

No. 2005–SC–000188–DG.

Supreme Court of Kentucky.

Nov. 22, 2006.

Rehearing Denied Feb. 22, 2007.

Raymond G. Smith, Edward H. Stopher, Boehl, Stopher & Graves, Louisville, Counsel for Appellant.

Philip McKinley, Louisville, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

For what appears to have been public safety reasons, a street lamp was installed at the intersection of Preston Highway and Miles Lane in Jefferson County. This was accomplished by means of a contract whereby Louisville Gas & Electric Company (LG & E) installed the street lamp and leased it to the Jefferson County Fiscal Court. The contract provided for installation of several such street lamps at specified locations and the county paid a monthly fee to LG & E. LG & E acknowledged that it was responsible for maintaining the street lamp under its agreement with the county.

At 8:30 p.m. on February 23, 2001, ten-year-old Shytone Roberson attempted to cross the five lanes of Preston Highway north of the intersection. While on the highway, Roberson was struck by an oncoming vehicle and died of injuries received. It is contended that at the time of the accident the street lamp at the intersection was not working. There appears to be some evidence that the street lamp had been inoperable for a significant period of time. Appellees, the Roberson estate and his father, Jonathan Mark Roberson, claim negligence on the part of LG & E for failing to maintain the street lamp in a working condition and that such negli-

gence was a substantial factor in causing the death of Shytone Roberson.

The trial court granted summary judgment to LG & E, finding "no duty recognized under common law with regard to repair and maintenance of the non-dangerous instrumentality of a street lamp." On appeal, the Court of Appeals reversed upon a panel vote of 2–1 with the judges in the majority writing separately. Chief Judge Combs rendered the lead opinion relying upon the provisions of *Restatement (2d) of Torts*, Section 324A, the so-called "undertaker's doctrine." This doctrine imposes upon one who undertakes to render services for the protection of third persons liability for failure to exercise reasonable care, providing certain requirements are met. Judge Guidugli concurred in the result believing that LG & E owed a duty to maintain the street lamps but questioning whether it owed a duty to Shytone Roberson based on his having crossed the highway away from the crosswalk.[1] Judge Schroder dissented without opinion. Thus, the case was reversed and remanded to the trial court. This Court granted discretionary review and, for the reasons hereinafter set forth, affirms the Court of Appeals.

From the record, it appears that LG & E did not decide where street lamps were to be located; that the location of street lamps, including the one at the intersection of Preston Highway and Miles Lane, was decided by county government. While the contract between the Jefferson County Fiscal Court and LG & E is sparse, it specifies certain street lamp locations. Thus, a discretionary decision was made by the governmental entity that a street lamp should be installed at the relevant location. LG & E had no independent duty with respect to location, installation and maintenance of the street lamp, and its duty, if any, arose from its contract with county government to install and maintain the street lamp. As such, the duty upon LG & E was derivative of the contractual relationship it had with the county.

■ In general, government is charged with a duty of ordinary care with respect to highway safety. This duty requires government to keep highways

in a reasonably safe condition for travel, to provide proper safeguards, and to give adequate warning of dangerous conditions in the highway. This includes the duty to erect warning signs and to erect and maintain barriers or guardrails at dangerous places on the highway to enable motorists, exercising ordinary care and prudence, to avoid injury to themselves and others.[2]

While our decisions generally focus on the safety of motorists and their passengers, such rules, of necessity, apply to the ability of motorists to avoid injury to "others" including pedestrians. Recently, this Court held in *Commonwealth v. Babbitt*[3] that the Commonwealth could be held liable for failure to provide warnings or to erect guardrails at a particular location, and that the inquiry was fact-intensive with due regard for design guidelines, available funds, and cost effectiveness. We held "[i]f a determination is made that the failure to provide warnings or to erect a guardrail constitutes negligence, the factfinder must then determine from the evidence whether the presence of warnings or a guardrail would have prevented or

---

1. *But see Commonwealth v. Babbit,* (holding that liability should be apportioned in accordance with KRS 411.182).

2. *Commonwealth, Dep't of Highways v. Automobile Club Ins. Co.,* 467 S.W.2d 326, 328 (Ky.1971).

3. 172 S.W.3d 786 (Ky.2005).

reduced the damages sustained by the claimant and apportion liability in accordance with KRS 411.182."[4] In some circumstances, the danger of a roadway will be more or less obvious. Where a highway crosses a deep chasm, the need to erect guardrails would logically follow. In other circumstances, however, the danger of a particular roadway is not obvious and the inquiry will be, in the language of *Babbitt*, "fact-intensive" with due regard for a host of factors. In still other circumstances, the safety analysis may not be necessary because government has already made a discretionary determination that safety measures should be undertaken. In those cases, courts need not look behind executive decision making, but may accept the discretionary determination that protective measures are warranted. However, such discretion is not irrevocable, and a subsequent decision maker would not necessarily be bound by a previous discretionary determination.

■ More than ninety years ago this Court decided *Gee's Adm'r v. City of Hopkinsville*,[5] a case that addressed the issues presented here. The City of Hopkinsville had macadamized a street that crossed Little River. The street was ordinarily safe for passage, but in times of heavy rainfall the river was swift and dangerous. After having been away from Hopkinsville for the day, James Gee returned after nightfall. Without knowledge of the day's heavy rains and despite the presence of street lamps, upon traveling Second Street into Little River, Gee was swept away and perished. Affirming the trial court's dismissal, this Court held that the city had a duty to exercise ordinary care to keep its streets in a reasonably safe condition; that this duty did not arise except as to streets the city had undertaken to improve; and

that the manner or method of improvement was left to the discretion of city authorities. We held that the city was thus under no duty to construct a bridge across the river at Second Street, and that its failure to do so could not be the basis for liability. For its failure to erect a bridge, we said:

> A city is only guilty of actionable negligence when defects or unsafe places in a street that it constructs are the proximate cause of the injury complained of. If the street it constructs is reasonably safe, it is not to be made liable for the failure to adopt other methods of construction, or for the failure to do something that it might or might not do in its discretion. If, however, the city had erected a bridge across this river as part of Second Street, then the law would have imposed upon the city the duty of exercising ordinary care to maintain this bridge in reasonably safe condition for public travel, but it assumed no liability for its failure to erect one.[6]

*Gee's Adm'r* also claimed city liability for its failure to sufficiently light the street as to give notice of the dangerous condition. There was no contention that the lights provided were not functioning. As to the sufficiency of lighting, the Court stated:

> [W]hen the city has provided sufficient lights to make the streets that it has constructed reasonably safe for public travel, this, in any state of case, is its full measure of duty in respect to lights. If this view is correct, it follows that, as the lights furnished were sufficient for the character of streets that was constructed, the plaintiff failed to make out a case on account of inadequate lights[.][7]

---

4. *Id.* at 795.

5. 154 Ky. 263, 157 S.W. 30 (1913).

6. *Id.* at 31.

7. *Id.* at 32.

*Gee's Adm'r* articulates certain principles applicable to this case. If government undertakes, for the purpose of public safety, to improve streets and roadways, it must exercise ordinary care to put and keep them in a reasonably safe condition. And, if a discretionary determination is made as to a means (i.e., lighting) of improving public highway safety, there is a duty to exercise ordinary care to maintain the safety improvement.

■ When these principles are applied to the case at bar, certain conclusions emerge. As Preston Highway is a major thoroughfare in Jefferson County, and the county has improved it for public safety, the county must exercise ordinary care to keep it in a reasonably safe condition. Upon the determination that illumination was a component of reasonable safety, there was a duty to exercise ordinary care to maintain illumination.

The liability of LG & E, if any, is by virtue of its contract with the county. The so-called "undertaker's doctrine" as set forth in the *Restatement (Second) of Torts,* § 324A(b), provides that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if ... (b) he has undertaken to perform a duty owed by the other to the third person[.]

Dobbs, *The Law of Torts,* explains:

> Consistent with the Restatement rules, the defendant is of course subject to liability if he assumes a duty by mak-

ing a safety promise, and then negligently performs it, causing injury. That is a simple case of misfeasance and neither privity nor nonfeasance rules apply. Beyond that, a number of cases have imposed liability when the defendant has promised to inspect or repair traffic signals or elevators that create dangers when they are not properly working. The cases are not always clear whether liability depends upon active negligence or whether nonfeasance would suffice, but liability is imposed and the very fact that courts do not actually notice the distinction is itself evidence that they are entirely willing to impose liability for negligent nonperformance of a safety promise.[8]

These views mirror settled Kentucky law. Writing for this Court, Commissioner Osso W. Stanely said:

> It is quite elementary that a duty to exercise the proper degree of care may have its origin, as here, in a contract.... He contracted to relieve the plaintiff of the duty of keeping the combustible shavings incombustible. He thereby became liable to the plaintiff if while relying upon that promise it was injured by the defendant's violation of his contractual duty of vigilance in that respect.[9]

As previously discussed, the county appears to have determined that illumination of Preston Highway in the vicinity of Miles Lane was a necessary or desirable safety improvement of the highway. To implement its safety determination, the county contracted with LG & E to install and maintain street lamps. As such, LG & E had a duty to exercise ordinary care to see

8. Dan B. Dobbs, *The Law of Torts* § 321(2001) (internal citations omitted).

9. *Louisville Cooperage Co. v. Lawrence,* 313 Ky. 75, 230 S.W.2d 103, 105 (1950). *See also*

*H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 166, 159 N.E. 896, 898 ("The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all.").

that the street lamps it installed were maintained in a working condition.

Provided that public safety was the primary purpose of the street lamp, the duty of LG & E to exercise ordinary care with respect to maintenance of the street lamp has been established. Whether LG & E was negligent and whether its negligence, if any, was a substantial factor in causing the death of Shytone Roberson will be for the trier of fact to determine on remand. Accordingly, we affirm the Court of Appeals and remand to the Jefferson Circuit Court for further consistent proceedings.

GRAVES and SCOTT, JJ., concur.

WINTERSHEIMER, J., concurs by separate opinion in which McANULTY, J., joins.

ROACH, J., dissents by separate opinion in which MINTON, J., joins.

WINTERSHEIMER, Justice, concurring.

I concur in the result achieved by the majority opinion but wish to state my reasons separately.

The sole issue on appeal is whether LG & E owed a duty of care to a third party pedestrian to repair and maintain street lamps that it leased to the Jefferson County Fiscal Court.

Although the precise issue of whether LG & E has a duty to pedestrians for repair and maintenance of street lamps is a matter of first impression, the inquiry itself is not distinct from the general rules of negligence. The question of whether LG & E has a duty of care is a question of law, and in resolving an inquiry of duty, the Court is making a policy determination. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky.1992). This Court's previous cases have established a universal duty of care, providing that "every person owes a duty to every other person to exercise ordinary care in his

activities to prevent foreseeable injury." *Grayson Fraternal Order of Eagles v. Claywell*, 736 S.W.2d 328, 332 (Ky.1987). In order for the injury to be foreseeable, it is not necessary that the defendant should have been able to anticipate the precise injury sustained, or to foresee the particular consequences, but only that the injury is a natural and probable consequence of the negligence. *Eaton v. Louisville & N.R. Co.*, 259 S.W.2d 29 (Ky.1953).

In the present case, LG & E contracted with JCFC to maintain the street lamps from dusk to dawn every night. The faulty street lamp near the accident scene illuminated an area containing a residential apartment complex, a five lane highway, and a public high school. Furthermore, LG & E had no formal policies or procedures for monitoring the street lamps, and instead relied exclusively on citizen complaints. Because the street lamps function to illuminate an area between an apartment complex and a high school, it is reasonably foreseeable that a pedestrian could be struck by a car if the area was darkened as a result of LG & E's failure to keep the street lamps working properly. Because Shytone's death was a foreseeable consequence of LG & E's failure to maintain the street lamps, LG & E had a duty of care to prevent that injury.

The universal duty to prevent foreseeable injury is a duty of ordinary care. While the Circuit Court placed significance on the common law duty of utmost care required by an electric company in the maintenance of power lines, this Court has explained that because of the danger involved, ordinary care is the highest degree of care in the context of power line maintenance. *Green River Rural Electric Co-op. Corp. v. Blandford*, 306 Ky. 125, 206 S.W.2d 475 (1947). This higher degree of care is not to the exclusion of the universal duty of ordinary care, but rather an exten-

sion of ordinary care in dealing with extraordinarily dangerous instrumentalities. *Id.* In other words, the common law imposes a universal duty of ordinary care to prevent foreseeable injury, which also manifests as a duty to use the highest degree of care in the maintenance of dangerous power lines, but not to the exclusion of using ordinary care to prevent other types of foreseeable injuries.

Furthermore, because LG & E voluntarily assumed and was compensated for the duty of maintaining and repairing the street lamps, this Court has explained that LG & E would also assume a duty to protect third parties when (1) the failure to exercise reasonable care in performing the undertaking increases the risk of harm; (2) the duty undertaken is already owed to the third person by another; or (3) the third person relies on the undertaking. *Grand Aerie Fraternal Order of Eagles v. Carneyhan,* 169 S.W.3d 840 (Ky.2005). In this implicit adoption of § 324A of the Second Restatement of Torts, this Court explained that Roberson would have to demonstrate that LG & E undertook the maintenance of the street lamps for the protection of third persons, and that LG & E's negligent performance of that task increased the risk of harm to Shytone or caused him to suffer harm because either JCFC or his parents relied on LG & E to maintain the street lamps. *Ostendorf v. Clark Equipment Co.,* 122 S.W.3d 530 (Ky. 2003).

LG & E cites to cases from other jurisdictions that found no liability to third parties for a faulty street lamp to argue that the appropriate comparison is between the risk of harm between the maintenance of the street lamps negligently performed and the risk of harm without street lamps. As Florida's Supreme Court explained, this comparison is flawed because "the plaintiffs did not allege that [the Defendant] negligently *installed* the streetlights on an otherwise *un*lighted street. Rather, they allege that [the Defendant] negligently *maintained* the streetlights on an otherwise *lighted* street." *Clay Electric Cooperative v. Johnson,* 873 So.2d 1182, 1187 (Fla.2003). The focus of the comparison is between the negligent undertaking (contract for street lamp maintenance) and no undertaking (no contract for street lamp maintenance). In *Clay,* an adolescent was struck and killed while walking to a bus stop on or near a public street that was darkened because of a faulty street lamp. In that case, Clay Electric had been contracted to maintain the street lamps and the faulty lamp had been inoperable for at least two months. The court found that this raised a jury question as to whether Clay Electric's failure to repair the street lamp increased the risk of harm to the adolescent, therefore disposition on Summary Judgment would be inappropriate.

Furthermore, the court rejected Clay Electric's assertion that the adolescent's caregiver did not prove they relied on Clay Electric's undertaking of maintaining the street lamps. The court specifically noted that the record lacked any evidence that the adolescent's caregiver knew the street lamp was faulty, and raised a jury question as to whether the caregiver declined other precautions in reliance on Clay Electric's maintenance of the street lamps.

Although some facts in the present case differ from the facts in *Clay,* the duty of the electric company that voluntarily contracted to maintain street lamps for the benefit of third party pedestrians remains the same. LG & E did owe a duty to exercise ordinary care in maintaining the street lamps. Because that is the issue upon which the motion for Summary Judgment was granted, this case should be remanded. Whether LG & E breached its duty and whether Shytone's death was a

proximate cause of LG & E's alleged breach are not before this Court and are matters for a jury to decide.

Because LG & E owed a duty of care to pedestrians to maintain and repair the street lamps, the Court of Appeals should be affirmed.

McANULTY, J., joins.

ROACH, Justice, dissenting.

The issue in this case is simple: whether an electric company, which has contracted with a city to install and maintain streetlights, can be held liable for injuries to a pedestrian caused while crossing a major road where the bulbs in the adjacent streetlights have blown. Because the majority opinion places Kentucky "in the overwhelming minority among states that have considered this issue," *Clay Elec. Coop., Inc. v. Johnson,* 873 So.2d 1182, 1196 (Fla.2003) (Cantero, J., dissenting), I respectfully dissent.

It would be hard to improve upon Justice Cantero's dissent in *Clay* and I will quote him at length. He begins with a metaphysical certainty that is ignored by the majority, that is, the failure of Louisville Gas and Electric Company ("LG & E") to maintain the streetlight in question "did not place pedestrians at greater risk" than if LG & E never had provided streetlights at all. *Id.* Quite simply, no dangerous condition was created by LG & E because the natural state of nighttime is darkness.

This Court now joins Florida's Supreme Court in adopting an extreme minority position. Justice Cantero explained:

> The majority places Florida in the overwhelming minority among states that have considered this issue. As one court has recognized, "[c]ases in other jurisdictions almost uniformly hold that utilities are not liable to third persons for injuries caused by nonfunctioning streetlights." *Vaughan v. E. Edison Co.,* 48 Mass.App.Ct. 225, 719 N.E.2d 520, 522 (1999). These states follow Justice Cardozo's opinion in *H.R. Moch Co. v. Rensselaer Water Co.,* 247 N.Y. 160, 159 N.E. 896 (1928), and view streetlights as a mere benefit, the deprivation of which does not result in liability. Because *H.R. Moch* is the seminal case on the continuing duty to provide a benefit to the public, I believe it sheds some light on the issue here.

In *H.R. Moch,* a water company breached its contract with the city to furnish water to the city's fire hydrants. The plaintiff's building caught fire, and because of insufficient water pressure, the fire could not be extinguished. The plaintiff sued, alleging that the water company breached a common law duty. Justice Cardozo, writing for the court, reasoned:

> In a broad sense it is true that every city contract not improvident or wasteful, is for the benefit of the public. More than this, however, must be shown to give a right of action to a member of the public not formally a party. The benefit, as it is sometimes said, must be one that is not merely incidental and secondary. It must be primary and immediate in such a sense and to such a degree as to bespeak the assumption of a duty to make reparation directly to the individual members of the public if the benefit is lost.

159 N.E. at 897 (citation omitted). The court distinguished between conduct of a utility that would impose a duty to the public at large and conduct that would not:

> *If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there*

*exists a relation out of which arises a duty to go forward* .... The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good.

159 N.E. at 898 (citations omitted) (emphasis added). The court noted that the indefinite number of potential beneficiaries "would be unduly and indeed indefinitely extended by ... enlargement of the zone of duty." *Id.* at 899.

Many other jurisdictions also have refused to impose a duty to maintain existing streetlights. *See Turbe v. Gov't of the Virgin Islands,* 938 F.2d 427 (3d Cir.1991) (finding no duty where the plaintiff was assaulted near a nonfunctioning streetlight); *Sinclair v. Dunagan,* 905 F.Supp. 208 (D.N.J.1995) (applying New Jersey law and finding no duty where a pedestrian was struck by a car while crossing an intersection); *White v. S. Cal. Edison Co.,* 25 Cal. App.4th 442, 30 Cal.Rptr.2d 431 (1994) (finding no duty where the plaintiff was driving a moped and was hit by a car at an intersection where the streetlights were not functioning, noting that the failure to maintain a streetlight does not create a risk greater than the risk created by the total absence of a streetlight); *Quinn v. Ga. Power Co.,* 51 Ga.App. 291, 180 S.E. 246, 248 (1935) (finding no duty, despite a contract between the utility and the city, where two vehicles collided in an area where the streetlights were not functioning); *Shafouk Nor El Din Hamza v. Bourgeois,* 493 So.2d 112, 117 (La.Ct.App.1986) (finding no duty where a pedestrian was hit by a car near an inoperative streetlight, even though the utility had contracted with the municipality to install and maintain streetlights); *Vaughan,* 719 N.E.2d at 522 (finding no duty where a pedestrian was

hit by a car at an intersection on which stood an inoperative streetlight); *E. Coast Freight Lines v. Consol. Gas, Elec. Light & Power Co.,* 187 Md. 385, 50 A.2d 246 (1946) (finding no duty, despite a contract between the utility and the city, where two vehicles collided at an intersection where the streetlights were not functioning); *Thompson v. City of New York,* 78 N.Y.2d 682, 578 N.Y.S.2d 507, 585 N.E.2d 819, 820 (1991) (finding no duty where a pedestrian was struck by an automobile near a nonfunctioning streetlight because the street was not unusually dangerous in the absence of the streetlight); *Gin v. Yachanin,* 75 Ohio App.3d 802, 600 N.E.2d 836 (1991) (finding no duty where a pedestrian was injured as a result of a deenergized traffic signal, even though the utility company may have breached its contract with the municipality to supply power to the signal); *Fishbaugh v. Utah Power & Light,* 969 P.2d 403 (Utah 1998) (finding no duty where a pedestrian was struck by an automobile near a non-functioning streetlight because the street was not unusually dangerous in the absence of the streetlight); *Dattner v. Lamm,* 5 Pa. D. & C.2d 552, 1956 WL 6509 (Pa.Com.Pl.1956) (finding no duty where a pedestrian was struck by an automobile near a non-functioning streetlight); *White v. Tilcon Gammino, Inc.,* No. KC88–0618, 1992 WL 813636 (R.I.Super.Ct. July 28, 1992) (finding no duty was owed to the driver of an automobile because she was not an intended beneficiary of the contract between the utility company and the municipality). *Id.* at 1196–98.

An even more succinct statement of the rule applied by the majority of jurisdictions to failed lighting cases is as follows:

The duty of a municipality to maintain existing street lights is limited to those

situations in which illumination is necessary to avoid dangerous and potentially hazardous conditions. However, it is also held that improper, insufficient, or defective lighting will not create liability, even though the municipality has assumed the duty to light its streets, when the streets are otherwise reasonably safe.

63 C.J.S., *Municipal Corporations* § 748 (2006) (footnotes omitted). Although this formulation of the rule specifically addresses the direct liability of the city, it applies just as well to the city's contractual agents, such as LG & E.

Perhaps the most curious aspect of the majority opinion, however, is its reliance on Section 324A(b) of the Restatement (Second) of Torts. That formulation of the "undertaker's doctrine," one of three alternatives presented in the Restatement, imposes liability for injuries to a third party where a defendant "has undertaken to perform a duty owed by the other to the third person..." *Clay* which imposed liability on the basis of Section 324A under similar factual circumstances took a different approach, relying instead on subsections (a) and (c) of the Restatement to justify the imposition of a duty.[1] Indeed, Judge Combs, who wrote the Court of Appeals opinion in this case, concluded that LG & E owed a duty to Roberson pursuant to the undertaker's doctrine under either of these alternatives, but specifically declined to discuss the imposition of a duty under subsection (b). Presumably, the reluctance of courts to extend liability under subsection (b) is because, as discussed above, most courts have declined to recognize any general duty to provide or

maintain roadway lighting under ordinary circumstances. The majority, through its reliance on and application of Section 324A(b), has discarded this time-tested approach.

Finally, I would note that the majority opinion significantly expands the duty owed by entities like LG & E beyond anything currently in our precedent. And it does so without considering the broad public policy implications of the decision. Clearly, the ability of respective parties to bear a loss is a factor to consider in the allocation of risk. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 24 (5th ed.1984). The "imposition of tort liability on those who must render continuous service of this kind to all who apply for it under all kinds of circumstances could [also] be ruinous and the expense of litigation and settling claims over the issue of whether or not there was negligence could be a greater burden to the rate payer than can be socially justified." *Id.* at 671. As pointed out by Justice Cantero:

> The cost of compelling a utility to ensure that all the streetlights it maintains are continually in working order outweighs any potential reduction of risk. Under the majority's analysis, utilities such as Clay Electric must guarantee illumination of all the streets in the entire area they serve. The majority presumably believes that utilities will shoulder this burden alone, but it is the ratepayers who will bear the brunt through higher rate structures. This is an unfortunate and unnecessary result, given that automobile liability insurance is capable of

---

1. Under subsection (a), a duty is imposed where an individual's negligence in performing his undertaking increases the risk of harm to a third party. Subsection (c), on the other hand, recognizes a duty when it can be shown that the injured third party relied upon the undertaking. Since the majority has not offered either of these alternatives to justify its position, there is little need to specifically address the issue. I would note, however, that Justice Cantero offers a compelling critique of liability under both of these theories in his dissent in *Clay. See Clay*, 873 So.2d at 1198–1200.

providing the required protection—indeed, it has done so until now.

*Clay,* 873 So.2d at 1204 (Cantero, J., dissenting).

Make no mistake about it, every utility company in this state that has contracted to maintain streetlights will have to hire additional workers to avoid the sort of liability created by the majority opinion. In a city the size of Louisville, one can only imagine the number of roving nighttime patrols that will be necessary to identify burned-out and malfunctioning streetlights quickly enough to satisfy the onerous duty created by this Court. Of course as is the case with any cost incurred by a regulated utility, the cost will be borne by the customers.

Florida recognized the costs of this expanded duty rather quickly. In 2005, just over two years after *Clay,* the Florida legislature reigned in the Florida Supreme Court and effectively overturned *the case* by statute. *See* Fl. St. 768.1382 (Effective June 20, 2005) (imposing a limitation on liability of streetlight providers for inoperative or malfunctioning streetlights if the provider repairs streetlights after actual notice). With the passage of that statute, Florida moved out of the extreme minority position, meaning that today's majority opinion leaves Kentucky in a very lonely position. I can only hope that the General Assembly follows the example of Florida's legislature and leads us out of the desert sooner rather than later.

MINTON, J., joins this dissenting opinion.