RENDERED:  APRIL 23, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0877-MR

LAURA BURTON                                                  APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.          HONORABLE KIMBERLY N. BUNNELL, JUDGE
ACTION NO. 18-CI-03705

NLP PARK PLACE, LLC; DIAMOND LANDSCAPES, INC;
LEXINGTON RELOCATION SERVICES, LLC; AND
NTS DEVELOPMENT COMPANY                                       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON,
JUDGES.

THOMPSON, L., JUDGE:  Laura Burton appeals from an order of the trial court

which granted summary judgment in favor of NLP Park Place, LLC (hereinafter

referred to as "Park Place"), Diamond Landscapes, Inc. (hereinafter referred to as

"Diamond"), and NTS Development Company (hereinafter referred to as "NTS").

We believe the trial court did not err in granting summary judgment, and we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Park Place and NTS own and operate an apartment complex in Lexington, Kentucky called Park Place Apartments. On the morning of January 15, 2018, Ms. Burton went to her mother's apartment at Park Place Apartments. Lexington had experienced a multi-day snow storm preceding January 15, 2018. Park Place contracted with Diamond to provide snow removal services at the apartment complex. Diamond was to remove the snow and ice from the drive lane of the parking lots. Diamond was not contracted to remove the snow and ice from the parking spaces. Diamond used a snow plow and salt to remove and prevent snow and ice accumulation in the parking lot drive lane.

When Ms. Burton arrived at the apartment complex, there was no parking available in the parking area closest to her mother's apartment. She parked across the drive lane from the apartment. The parking spaces in this area were covered in snow. When she exited her car, she knew there was snow and ice underfoot. She was able to safely walk from her parking spot, cross the cleared drive lane, and enter her mother's apartment.

---

[1] The appellee Lexington Relocation Services, LLC, was not involved in the motions for summary judgment at issue; therefore, we will ignore them. They are a third-party defendant brought into the case by Park Place and NTS.

After about an hour, Ms. Burton left the apartment to go back to her car. According to her deposition, she crossed back over the cleared drive lane and as she "stepped onto the snowy, icy part where [her] car was parked," she lost her footing, fell, and broke her leg. She estimated that she fell after the first or second step off of the cleared drive lane. She also stated during her deposition that she fell beside the rear of her car.

Ms. Burton then brought the underlying suit alleging negligence by Park Place, NTS, and Diamond. She alleged that the parking lot should have been better cleared of snow and ice. After discovery, Appellees moved for summary judgment. A hearing was held, and the trial court granted the motions for summary judgment. The court held that NTS and Park Place acted reasonably and did not breach a duty owed to Ms. Burton. The court also held that Diamond did not owe a duty to Ms. Burton, and Ms. Burton proceeded across the parking lot with actual knowledge of an open and obvious condition. This appeal followed.

## ANALYSIS

The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. . . . "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances." Consequently, summary

-3-

> judgment must be granted "[o]nly when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor[.]"

*Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citations omitted).

We will begin our analysis with Diamond. "The basic negligence tort paradigm has never changed: duty, breach, causation, damages." *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015). The trial court held that Diamond had no duty to prevent Ms. Burton's injuries. We believe this is incorrect. Diamond owed a duty to protect third parties by properly clearing the drive lane as set forth in the contract. We believe the case of *Louisville Gas and Electric Company v. Roberson*, 212 S.W.3d 107 (Ky. 2006), is illustrative of this duty. In *Roberson*, Louisville Gas and Electric Company (hereinafter "LG&E") installed a street light and leased it to the Jefferson County Fiscal Court. Under the agreement, LG&E was responsible for the maintenance and upkeep of the street light. A ten-year-old boy was killed at an intersection where this street light was located. The boy was killed by being struck by an oncoming car. At the time of the accident, the street light was not working, and there was evidence that the light had been inoperable for some time. The boy's family and estate sued LG&E alleging negligence. The theory was that if the street light had been working properly, the accident might have been avoided, and LG&E was negligent for not

maintaining the light as required under the agreement with the Jefferson County Fiscal Court.

The trial court granted summary judgment in favor of LG&E. On appeal, a panel of this Court reversed, citing the "undertaker's doctrine." This doctrine states in pertinent part that

> [o]ne who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if . . . (b) he has undertaken to perform a duty owed by the other to the third person[.]

*Id.* at 111 (quoting RESTATEMENT (SECOND) OF TORTS § 324A (1965)). The Kentucky Supreme Court then affirmed the holding of the Court of Appeals. The Court held that because the installation and maintenance of the street light was a safety issue, LG&E had a duty to exercise ordinary care in maintaining the light.

We believe a similar situation arose here. The plowing and salting of the drive lane was clearly a safety issue. Park Place contracted with Diamond to provide the service and give residents a safe, ice-free path. Diamond had a duty to fulfill its obligation under the contract for the safety of Park Place's residents and guests.

We conclude, however, that summary judgment was still appropriate as it applies to Diamond. This Court can affirm on grounds not relied upon by the

trial court. *See Commonwealth Natural Resources and Environment Protection Cabinet v. Neace*, 14 S.W.3d 15, 20 (Ky. 2000); *O'Neal v. O'Neal*, 122 S.W.3d 588, 589 n.2 (Ky. App. 2002).

While Diamond may have owed a duty to Ms. Burton, it did not breach that duty. Generally, whether or not a duty was breached is a factually intensive issue that should be reserved for a jury, *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 299-300 (Ky. 2015); *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 913-14 (Ky. 2013). However,

> summary judgment remains a viable concept . . . . The court's basic analysis remains the same because, on a motion for summary judgment, a court must still examine each element of negligence in order to determine the legitimacy of the claim. But the question of foreseeability and its relation to the unreasonableness of the risk of harm is properly categorized as a factual one, rather than a legal one. This correctly "examines the defendant's conduct, not in terms of whether it had a 'duty' to take particular actions, but instead in terms of whether its conduct *breached* its duty to exercise the care" required . . . . If reasonable minds cannot differ or it would be unreasonable for a jury to find breach or causation, summary judgment is still available to a [defendant]. And when no questions of material fact exist or when only one reasonable conclusion can be reached, the litigation may still be terminated.

*Shelton*, 413 S.W.3d at 916 (footnotes omitted).

We believe this is a case where summary judgment is appropriate because the evidence shows that Diamond fulfilled its contractual obligation.

-6-

Diamond was to plow and salt the drive lane which went through the middle of the parking lot. They were not required to remove the snow and ice from the parking spaces. Ms. Burton testified during her deposition that she fell after taking one or two steps off of the clear drive lane. She also testified that she fell at the rear of her car. Chad Cole, Park Place's maintenance supervisor, stated during his deposition that he has witnessed Diamond clear the drive lane and they "do as much as they can, as far as they can over." Finally, a picture in the record shows Ms. Burton's snow-covered car, the cleared drive lane, and a small patch of snow at the rear of her car.

The testimony and photographic evidence show that Diamond plowed as close as possible to Ms. Burton's parking spot. There was no evidence that Diamond did not adequately perform under the snow removal contract. Since Diamond did all that was required under the contract with Park Place, there can be no breach of the duty described by the "undertaker's doctrine." Summary judgment was appropriate for Diamond.

We now move on to Park Place and NTS. The trial court held that Park Place and NTS acted reasonably in hiring Diamond and did not breach the duty owed to Ms. Burton. All parties agree that Park Place and NTS had a duty to keep the property in a reasonably safe condition in order to protect residents and their guests. The trial court held that there was no breach of the duty because

plowing and salting the drive lane was the only reasonable course of action. The court stated orally at the conclusion of the summary judgment hearing that there were no better alternatives raised by Ms. Burton. Ms. Burton argued that Park Place and NTS could have used a plow or Park Place's maintenance people to clear the parking areas, especially those parking places that were empty.

We believe summary judgment was also proper as to Park Place and NTS. Generally, whether or not a defendant acted reasonably in a negligence action is a "classic jury question[.]" *Estep v. B.F. Saul Real Estate Inv. Tr.*, 843 S.W.2d 911, 914 (Ky. App. 1992). "There must be a weighing of the burden of eliminating the risk with the harm posed. . . . The greater the burden of eliminating the risk, the greater the risk of harm must be." *Shelton*, 413 S.W.3d at 918. In other words, the harm of the snow and ice present in the parking spaces must be weighed against the burden of clearing those spaces. That weighing involves examining the cost, in both money and manpower, in removing the snow and ice from the parking spaces versus the risk of residents and guests slipping and falling.

We conclude that Park Place and NTS acted reasonably. Testimony from David Rempfer, Diamond's snow operations manager, indicated that Park Place had the second highest level of snow removal available, called "Routed One." These customers automatically receive service every eight hours or less during a winter weather event. In this case, Diamond visited Park Place

-8-

Apartments five times in the three days before Ms. Burton fell. Mr. Rempfer also testified that the highest level of snow removal services, "Dedicated," is usually reserved for "larger sites" which have a "tremendous volume of people," such as large hospitals and shopping centers. For those customers, Diamond has people and equipment on the site 24 hours a day until the winter weather event is over. Mr. Rempfer also stated that Diamond's snow plows were too big to clear each individual parking space and to do it by hand would be too costly. Mr. Cole stated during his deposition that it took his maintenance team 6 to 8 hours to manually clear the sidewalks and stairways of the apartment complex and estimated it would take "two weeks" to manually clear the parking spaces. Finally, prior to the snowstorm, Park Place management emailed all tenants and informed them of the dangerous conditions.

We must also acknowledge the open and obvious nature of the hazard encountered by Ms. Burton. She testified that she could tell there was ice under the snow and was walking carefully to try and prevent herself from slipping.

> Under the right circumstances, the plaintiffs conduct in the face of an open-and-obvious hazard may be so clearly the only fault of his injury that summary judgment could be warranted against him, for example when a situation cannot be corrected by any means or when it is beyond dispute that the landowner had done all that was reasonable.

*Carter*, 471 S.W.3d at 297 (citation omitted).

Here, the evidence indicated that Park Place and NTS took every reasonable step they could to keep the parking area as safe as practicably possible. Park Place and NTS's reasonable actions, coupled with the open and obvious nature of the hazard, make this a case ripe for summary judgment. The trial court did not err in granting summary judgment in favor of Park Place and NTS.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

ALL CONCUR.

BRIEF FOR APPELLANT:

Josh Autry
Tanner H. Shultz
Lexington, Kentucky

BRIEFS FOR APPELLEES NLP
PARK PLACE, LLC; DIAMOND
LANDSCAPES, INC; AND
NTS DEVELOPMENT COMPANY:

Gregg E. Thornton
Joshua L. Ellis
Lexington, Kentucky